WOODRICH *v.* ST. CATHERINE GRAVEL CO.

(Division B. April 1, 1940.)

[195 So. 307. No. 34109.]

418

Lotterhos & Travis and **Vardaman S. Dunn**, all of Jackson, for appellant.

Engle & Laub, of Natchez, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellee, St. Catherine Gravel Company, was engaged in the business of mining gravel and selling gravel and sand in this State.

On October 26, 1937, the appellee entered into a written contract for the sale of washed gravel and sand for the sale price of ninety and seventy cents per ton, respectively. The appellee was to furnish all said commodities to Woodrich to be used on a certain paving project, and contract by him with the State Highway Commission and payment therefor was to be made monthly.

In compliance with the contract, appellee, at various times, furnished appellant many tons of gravel and sand, beginning January 28, 1938, and ending June 1, 1938, as shown by its sworn itemized account exhibited with its declaration in its suit for a balance alleged to be due it of $1,142.12 against appellant.

As illustrative of the entire account, we set forth the first item, viz.:

Jan. 28th to 1701.73 tons washed gravel @ .90
per ton                                        $1,531.56
to 796.53 tons washed sand @
.70 per ton                                557.57
Mississippi 2% Sales Tax                    41.78

Other items differed only in tonnage and extended sales price as to gravel and sand. There was also included in this account a charge against appellant of $155 interest on "Trade acceptance," and some small items not nvolved here.

The credits on the account are various monthly payments, the total of which, deducted from the total charges, leaves the above balance due. The total amount of sales tax sued for was $737.32.

Appellant filed a general issue plea with notice. This notice exhibited a copy of the written contract, and then used this language: "That under the terms of said contract so thus exhibited, *no Sales Tax was included or provided for*, and that under the law no such tax is due to the plaintiff by the defendant, and therefore the defendant denies that he is liable to pay to the plaintiff the sum of $737.32 alleged to be due on account of said item or any part thereof." (Italics ours.)

In open court, in writing, appellant tendered to appellee the sum of the principal $249.80 and interest, and court costs to that date, in full settlement and satisfaction of appellee's claim.

The case was tried before the circuit judge without a jury, and judgment was entered by the court in favor of appellee against appellant for $987.12, which is the amount of sales tax claimed and the amount admitted by appellant to be due by him by his tender. The court refused judgment for $155, interest on trade acceptance, and this item disappears from this case.

From that judgment, appellant prosecutes an appeal here.

The court heard the case on certain agreed stipulations, by which the only item at issue is the sales tax. It was

agreed that the appellee mined, washed and delivered the gravel and sand; and that appellant is a citizen of Minneapolis, Minnesota. The exhibited written contract between the parties was agreed to be correct and admitted in evidence. It was in evidence orally that no sales tax was included in the sales price set forth in said contract, and that it had not been paid by appellant. Before June 1, 1938, appellee demanded that appellant pay the sales tax, which was after the State Tax Commission had demanded of appellee the payment by it of this tax. At the time appellee made demand for such payment by appellant, he requested that appellee hold the matter in abeyance as he (Woodrich) wanted to try to adjust the matter; that is, see if he could not have the sales tax placed by the State at one-eighth of one per cent instead of two per cent. This latter evidence was objected to by appellant as being an attempt to vary by parol the written contract.

The first assignment of error here argued by appellant is: "The written contract cannot be varied by adding thereto a claim for taxes not provided for therein."

The appellant contends that the prices, ninety and seventy cents per ton, set forth in the written contract, is a flat composite agreement as to sales price upon which he had a right to rely, and to add the state sales tax varies, as he thinks, the written contract.

In the first place, in the notice under the general issue, the part of which we quoted, he specifically admitted that no sales tax was included or provided for in the written contract. He was bound by his pleading.

In the next place, the written contract shows on its face that the sales price was agreed upon by the parties and if a sales tax is due under the controlling statutes, it was not a violation of the parol evidence rules to show what the real consideration was, for the prices agreed to by the parties or what elements entered into that consideration and the evidence thereon only conform to the contract and in no sense conflicts with or varies it.

We further say that under the controlling statute, Sec. 1, Chap. 155, Laws 1936, which amends Sec. 2-c, Chap. 119, Laws 1934, it is mandatorily required that the seller shall collect the sales tax by adding to the sales price the two per cent sales tax thereon in addition to the sales price and we think the contract for future delivery of gravel and sand shows that no sales price in the aggregate could have been ascertained until the tonnage sold was ascertained, except in defiance of the law.

Appellant cites as conclusive authority, the case of Mattingly et al. v. G. B. R. Smith Milling Company, 183 Miss. 505, 184 So. 635, wherein it was sought by a defendant to set off $1.38 per barrel for flour sold by the milling company to him, which he alleged was included in the price per barrel in the contract of sale as a processing tax imposed by the Federal Agricultural Adjustment Act, 7 U. S. C. A., section 601, et seq. The seller after the act had been declared unconstitutional, undertook to recover the tax unsuccessfully. This court held that the price per barrel was agreed to between the parties with processing tax included in the price per barrel, and intermingled as a part thereof, and the buyer, without reservation, agreed to pay that price in such case, and the buyer was without remedy, although, by the annulment of the tax, the profit of the seller was thereby increased.

We have no such case here. The tax here was upon the dollar collected on the contract sale price, and no such provision appears in the Act of Congress as appears in the cited sales tax statute.

Furthermore, Section 1 of Chapter 155, Laws of 1936, distinctly provides that, whatever the contract as to the sales price, the amount of the tax due by the seller shall be added to the sales price of the property, and that the seller shall collect the amount from the buyer, and this sales tax collection by the seller from the buyer should be in addition to the sales price. When the parties to this contract made it, they made it in contemplation of this

section of law being enforced, and they knew or are now charged with knowledge that the sales price would have added thereto the two per cent sales tax thereon, and that this sales tax should be in addition to the sales price agreed to by the parties. This statute, in this language, created, when the statute became effective, the relationship of debtor and creditor as to the sales tax. We do not think anyone could dispute that. We cannot lend our ear to the argument that the parties hereto violated the law by making a contract including the sales tax in the original sales price which, if permitted, would have allowed a complete circumvention of the purpose of the law. The prime purpose of the section here involved was to require the seller to impose the tax and collect it. One reason therefor being to prevent dealers and sellers of tangible property from jockeying with the trade with the sales tax.

(2) It is insisted by appellant that the judgment in the case at bar is not authorized by the Mississippi sales tax statute.

This law was enacted in 1934. Section 2-c imposed the tax "Upon every person . . . selling any tangible property whatsoever, . . . a tax equivalent to two per cent . . .", et cetera. While Section 2-c was in force, and in conjunction with Section 1, Chapter 155, Laws of 1936, the tax was upon the seller of the property herein if sand and gravel constituted tangible property. Of course, these products were of that nature, and the seller of them was subject to the tax.

However, Section 2-a of the original act imposed a two per cent privilege tax "Upon every person engaging or continuing within this state in the business of mining . . . sand, gravel, . . ." and this was levied on the gross product from the mine. The privilege tax was upon the business of mining. The amount of the tax was to be ascertained by the value of the gross product. However, Section 2-c of the original act provided that collections made by a seller within the State

should be credited on this mining tax in the manner provided in the statute to the extent the product was sold within the State, the privilege tax for mining was reduced pro tanto. We have already determined that the applicable statutes created the relationship of debtor and creditor on the facts of this case, between the buyer and the seller. That gave rise to a cause of action—whether it was two cents or two million cents. The amount was immaterial. The debt became fixed when the purchaser proceeded to pay the agreed sales price, and if it is true that the seller was required to demand payment of the sales tax at the time he took payment in full or partial payment of the sales price, and he did not then and there collect it, can any sane man say that the tax part of the debt was destroyed? Or, if perchance the seller violated Section 3 of Chapter 155 by failure or refusal to add to the sales price and collect the amount due by him on account of said tax, can anybody say that discharged or extinguished the debt which was superimposed on the contract by the statute? We must emphatically reply in the negative. We think therefore, whether through mistake or carelessness, or want of care or design, the seller did not collect the sales tax, at the time provided by the statute, that tax became due and payable by the buyer to the seller, and that this is true notwithstanding the seller may have committed a misdemeanor by violating Section 1 of the Act. However, the buyer in this case sought to have the collection of the sales tax delayed in order that he might secure from the State Tax Commission a reduction of the two per cent sales tax to one-eighth per cent.

After all, much of the discussion in this case hinges around a matter of bookkeeping. The account in this case shows that there were numerous credits by monthly payments. If and when these payments were made, the seller had then and there formally declared that he was collecting the two per cent sales tax, and had reduced the amount of the payment on his books by the amount of

the sales tax he had deducted from said payment and had added to the sales price, the result would be the same if the buyer and seller had not formally consented thereto. The buyer would have then contended that the balance due was really the sales tax wrongfully added, while the seller would have contended that it was the balance due on the sales price.

In this act, and the amendments thereto, there is provided that the sales tax shall be imposed upon sales on credit just as cash sales are subjected to the tax, but only upon the amount of the collection of the debt as and when collected. The statute here imposed the sales tax upon the seller and mandatorily required the seller to add to the purchase price the two per cent sales tax, and that this sales tax should be collected in addition to the sales price of the tangible property sold.

Although the statute involved requires the seller to pass this sales tax on to the buyer, and really constitutes the seller a collector thereof for the State, there is no constitutional objection thereto. See State ex rel. Rice, Attorney General, v. Allen et al., 180 Miss. 659, 177 So. 763.

It is inescapable then that the statutes imposed the tax, and that appellant here has not paid the debt created thereby and is liable therefor.

Affirmed.