JONES, Justice:
Appellant, Viking Supply Corporation, sued appellee, Mantee Development Foundation, Inc., for sales tax ($715.73) alleged to be due because of sales to appellee of materials. A jury in the Circuit Court of Webster County returned a verdict for ap-pellee. We reverse and enter judgment here for appellant.
We shall hereafter refer to the parties as “Viking” and “Mantee.”
Mantee was a recently organized corporation for the purpose of constructing a water production and distribution system. For this purpose, it had secured approval of a loan of $80,000 from the United States Department of Agriculture, Farmers Home Administration.
Copies of specifications for a deep water well, a storage tank, and distribution system were prepared for inspection by, or sale to, prospective bidders and included forms for submission of bids, together with form of bond, etc. A sentence in one of the forms read:
Above unit prices shall include all labor, materials, overhead, profit, insurance taxex (sic), etc., to complete the finished work as described on the Plans and Specifications.
One sentence on the sheet “Information for Bidders” read:
The Owner may consider informal any bid not prepared and submitted in accordance with the provisions hereof and may waive any informalities or reject any and all bids.. * * *
*888 Mr. W. M. Barton was the project engineer in charge for Mantee. On the trial of the case, Mantee pleaded that Viking had purchased a copy of the specifications and had bid on materials in accordance therewith, assuming the sales tax. Viking had expressly agreed to assume same. This was denied by Viking and was the only issue.
Mississippi Code 1942 Annotated section 10117 (Supp.1966) makes it mandatory for the seller to collect sales tax from a buyer where practical. Woodrich v. St. Catherine Gravel Co., 188 Miss. 417, 195 So. 307, 127 A.L.R. 1179 (1940).
Assuming that it would be legal for the seller to agree to assume and pay the sales tax, the only issue here was whether Mantee owed the sales tax, and having pleaded that Viking assumed same, the burden of proof would be on Mantee to prove such assumption.
One Myers was the representative of Viking in the negotiations. He purchased a copy of the plans and specifications. Mantee argued that he bid in accordance therewith, agreeing to assume the taxes.
This is denied by Myers who testified he purchased the plans and specifications sole-, ly to obtain a list of the materials desired. He was emphatic in his statement that he did not “bid,” but merely quoted prices to Mantee as he did at the same time to a contractor who purposed to bid.
The first discussion about sales tax related to whether Mantee was exempt. The officers thought it was. Viking, through Myers, asked for a letter to this effect. It was promised but never came. When the Tax Commission assessed Viking therewith, they paid it as required.
Mr. Myers testified that he was quoting prices with only a five-percent profit and could not assume a tax of three or three and one-half percent. When bids and offers were totalled on the day of their consideration (October 17), they were said to exceed the amount of the loan promised by the Farmers Home Administration and could not be accepted. Myers promised to consult his suppliers to see if they would reduce their prices, which they did, and he later submitted a revised quotation or invoice under date of December 9, 1963. This invoice was signed by Mantee by W. M. Barton, engineer. When this order, constituting the contract, was returned by Mr. Barton, he wrote a letter saying, “These copies are signed assuming that they are in accordance with your bid. * * * ” On the bottom of the order the sign was printed: “Promises, understandings and/or agreements not embodied herein are not a part of this order. * * * ”
Mr. Myers testified no bond or any of the other requirements for bidders was submitted by him. The president of Man-tee thought a cashier’s check accompanied the alleged bid of October.
Mr. Myers was asked if he remembered a telephone conversation with Mr. Barton that he could deduct all sales tax and Man-tee would be released on payment of the balance. This was denied by Mr. Myers.
Mr. Myers was also asked if Mr. Barton didn’t tell him that any bid he submitted would be in accordance with the specifications and would include all taxes. Mr. Myers said no.
He was asked if Mr. Barton ever pointed out to him the provision that bids should include all taxes. He said no.
Mr. Myers said Mr. Barton at one time wanted him to bid on the specification form and he (Myers) told him as a supply man, he could not bid on that form and he (Barton) said, “Well, just send me your quotations.”
The record shows Mr. Barton was present at the trial but strangely was not introduced as a witness in spite of the fact he was the one who made the contract and had the specific dealings with Mr. Myers and was the one about whom Mantee’s attorney queried Mr. Myers.
*889 Mr. Myers also testified the bills had been rendered for months with sales tax added.
Mantee introduced its president and the Farmers Home Administration representative for that area. Neither of these witnesses offered any relevant and competent evidence to establish Mantee’s claim that Viking had agreed to absorb the tax, and this testimony did not meet Mantee’s burden, being no more than a scintilla, if that.
Viking’s motion for a peremptory instruction should have been sustained.
The case is reversed and judgment entered here for $715.73 in favor of Viking, with interest at the rate of six percent per annum from February 28, 1966, the date the suit was filed. Collins v. Carter, 155 Miss. 600, 125 So. 89 (1929).
Reversed and judgment here for appellant.
ETHRIDGE, C. J., and GILLESPIE, PATTERSON, and ROBERTSON, JJ., concur.