L. B. PETE, Plaintiff-Appellant,

v.

CUMBERLAND COUNTY, Tennessee, et al., Defendants-Appellees.

Supreme Court of Tennessee.

Sept. 28, 1981.

R. Thomas Stinnett, Knoxville, for plaintiff-appellant.

Landon Colvard, Jr., Bean, Bean & Colvard, Crossville, Charles L. Lewis, Asst. Atty. Gen., Nashville, for defendants-appellees; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Chief Justice.

The single issue presented in this case is the constitutionality of Tennessee Private Acts 1979, chapter 145. This was an enabling Act, authorizing the legislative body of Cumberland County to impose a privilege tax upon the occupancy of hotels and motels. The Act was duly ratified by the local legislative body and the tax imposed. The statute requires operators of hotels and motels to collect the tax from their customers, to remit it to the county trustee and to keep appropriate records in connection therewith. The operator of a business is subject to a fine for willful refusal to collect or remit the tax and is subject to a penalty for delinquency in payment.

The enabling legislation makes no provisions for compensation to the operator of a hotel or motel for keeping records and for collecting and remitting the tax. For that

reason appellant insists that the legislation violates the due process clauses of both the state and federal constitutions and constitutes a taking of his services or property without just compensation.

Appellant particularly relies upon provisions of the state constitution, Tenn.Const., art. I, § 21. Attacks on similar legislative provisions have frequently been made under the due process clauses of the fifth and fourteenth amendments to the United States Constitution. They have uniformly been held to be without merit. The leading case is *Pierce Oil Corp. v. Hopkins*, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593 (1924). In that case an Arkansas statute required distributors of gasoline for use in motor vehicles on state highways to collect a tax of one cent per gallon, file a monthly report of sales made and remit the taxes collected each month. Failure to file the report and pay the tax was made a misdemeanor, subjecting the dealer to a fine. There was no provision for compensation or reimbursement to the distributor for any expenses in connection with the keeping of records and the remitting of the tax. Responding to an insistence that the statute violated the due process provisions of the United States Constitution, the Supreme Court of the United States said:

> "A short answer to this argument is that the seller is directed to collect the tax from the purchaser when he makes the sale, and that a state which has, under its Constitution, power to regulate the business of selling gasoline (and doubtless, also, the power to tax the privilege of carrying on that business) is not prevented by the due process clause from imposing the incidental burden." 264 U.S. at 139, 44 S.Ct. at 251.

See also *Monamotor Oil Co. v. Johnson*, 292 U.S. 86, 54 S.Ct. 575, 78 L.Ed. 1141 (1934).

The provisions of the Internal Revenue Code requiring an employer to withhold taxes on the wages of employees, to remit the same and to keep appropriate records have been held to be a legitimate incident of the taxing power and not violative of the due process clauses. *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970); *United States v. Roberts*, 425 F.Supp. 1281 (D.Del. 1977); *see also Abney v. Campbell*, 206 F.2d 836 (5th Cir. 1953), *cert. denied*, 346 U.S. 924, 74 S.Ct. 311, 98 L.Ed. 417 (1954) (social security withholding).[1]

Attacks upon similar privilege tax provisions in other states have likewise usually been unsuccessful. The fact that a retailer or hotel operator has been required to collect a tax from customers, keep records and remit the same without compensation generally has been held not to constitute a taking of property without due process or without just compensation. In *Gaulden v. Kirk*, 47 So.2d 567 (Fla.1950), a tax upon the privilege of selling hotel and motel services was upheld against numerous claims of constitutional violations, and the requirements regarding record keeping and remitting the tax were expressly held not to be in violation of due process. *See also Nachman v. State Tax Commission*, 233 Ala. 628, 173 So. 25 (1937); *Woodrich v. St. Catherine Gravel Co.*, 188 Miss. 417, 195 So. 307 (1940); *Blauner's Inc. v. City of Philadelphia*, 330 Pa. 342, 198 A. 889 (1938); *Morrow v. Henneford*, 182 Wash. 625, 47 P.2d 1016 (1935); Annot., 110 A.L.R. 1485, 1490 (1937); 117 A.L.R. 846, 850 (1938); 128 A.L.R. 893, 898 (1940).

In the case of *Standard Oil Co. v. Brodie*, 153 Ark. 114, 239 S.W. 753, 756 (1922), the Arkansas statute, which was also considered in *Pierce Oil Corp. v. Hopkins, supra*, was

---

1. Although not involving precisely the same contentions as made by appellant in this case, federal statutes imposing a tax upon admissions to athletic events and other entertainment have been upheld. These statutes required the collection and remittance of the tax by sponsors of the events. *Allen v. Regents of University System*, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448 (1938); *Wilmette Park District v.*

*Campbell*, 338 U.S. 411, 70 S.Ct. 195, 94 L.Ed. 205 (1949). The imposition upon financial institutions of duties of maintaining and transmitting records of customers' identities and transactions were held not violative of due process in *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

construed by the state Supreme Court. Upholding the statute, the Court said:

"It is next contended that the due process clause of the Constitution of this state and of the United States is violated by the requirement laid upon the dealers in gasoline to collect and pay the tax. It must be remembered that the tax is not laid on the sale of the gasoline, nor upon the business of the dealer. The dealer is not required to pay the tax, but to collect it, keep and present an account thereof, and pay it over to the county treasurer. The purpose of the statute is twofold, namely, to impose a tax upon the purchaser of gasoline for the use of the car, and to regulate the business of the dealer by requiring him to collect the tax and pay it over to the county treasurer. It is certainly within the power of the Legislature to regulate the business of selling gasoline, and it is not an unreasonable regulation, for it does not involve the payment of any fee, nor the performance of any unreasonable task."

There can be no question but that the operation of hotels and motels is a business which can be and has long been regulated in this state. The operators of such establishments are subject to the Division of Hotel & Restaurant Inspection of the State Department of Tourist Development. They must obtain an annual state permit in order to operate and pay prescribed fees therefor. T.C.A. §§ 53–2108 to 2109. Operators of such establishments are required to keep them in sanitary condition, to meet requirements of sanitary codes, and comply with safety provisions. T.C.A. §§ 53–2113, 2119, 2128 through 2136. They are required to cooperate with state inspectors and to post notices informing guests of such compliance. T.C.A. §§ 53–2119, 2124. They must post notices in each room of rates charged, T.C.A. § 62–701, and comply with numerous other statutory requirements. Fines for violation of safety and sanitation provisions are to be used for the "public common school" funds of the county in which the violation occurred. T.C.A. § 53–2127.

In our opinion, there is no question but that the private act involved here is a legitimate exercise of the power of taxation and the provisions challenged here are properly incident thereto. There is a marked difference between the power of eminent domain and the power to tax. *See L & N Railroad v. County Court*, 33 Tenn. 636, 679 (1854). There, commenting upon the clause relied upon by appellant here, forbidding the taking of private property for public use without just compensation (Tenn.Const. art. 1, § 21), and the power of taxation, the Court said:

"They are entirely distinct, and in every respect dissimilar. The former is when something beyond a mere equal share of the public burdens is taken from the citizen, and therefore he must be paid by that public to whose use it is applied; it is made a debt against the community of which he is a member. But this debt, as well as others which are contracted for the general good, can only be paid by taxation. The amount necessary for this and all other public purposes must be raised by exactions upon all, in some form of taxation. In relation to this, the idea of refunding, or compensation, cannot be conceived. It would be simply and palpably absurd. Here no man's property is taken, but a tax imposed."

The wording of the Tennessee constitutional provision relied upon by appellant, unchanged from its original adoption in 1796, is as follows:

"That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

The history of this provision was discussed in *Henley v. State*, 98 Tenn. 665, 683–687, 41 S.W. 352, 355–56 (1897). There the Court said that the language

"... comes first into our judicial history with the ordinance of the Continental Congress, passed in 1787, for the government of the territory northwest of the Ohio River, and in 1790 was extended to the territory southwest of that river. It

was not carried into the Federal Constitution, and has been inserted, so far as our investigation has gone, into the constitutions of only three states—Tennessee, Indiana and Oregon.

"Particular services must mean peculiar services; limited services; not ordinary or general services of an individual. It is not an easy matter to draw the distinction between particular and ordinary services in every instance, still some general rules may be given to mark the line. It seems clear that ordinary services, such as may be required of all citizens, or officials, by general or valid special laws, are not particular services." 98 Tenn. at 684, 41 S.W. 352.

In several cases it has been held that attorneys, as an incident to their license to practice law, may be required to serve as counsel for indigent defendants in criminal cases or as guardians ad litem for minors in civil cases without compensation. *See Patton v. Dixon*, 105 Tenn. 97, 58 S.W. 299 (1900); *House v. Whitis*, 64 Tenn. 690 (1875); *Wright v. State*, 50 Tenn. 256 (1871).

Appellant has cited no authority from within this state or elsewhere in support of his contention, except for some language contained in the majority opinion in *In re Opinion of the Justices*, 88 N.H. 500, 190 A. 801 (1937). There the Court stated that "a majority of us" believe that requirements such as those imposed upon appellant in the present case would violate due process and would constitute "a confiscatory deprivation of his rights of equality." We do not find this authority to be persuasive or in keeping with the general law.

Appellant seeks to distinguish the *Pierce Oil Corp.* case, *supra*, upon the basis that the gasoline tax there involved, at least in part, was to be utilized for highway purposes. It is his insistence that the proceeds of the privilege tax in the present case, which have been allocated for the county school funds, in no way benefit the operators of hotels or motels. We do not believe that this is a valid distinction, nor was it the basis upon which the United States Supreme Court rested its decision. Further, we have already noted that the proceeds of fines resulting from violation of the statewide hotel and motel safety and sanitary regulations are required, by general state law, to be allocated to county school funds. The proceeds of the tax here involved have been directed to the same general use.

The duties incident to the collection and remitting of the tax here at issue are imposed upon all hotel and motel operators within the county. The fact that the General Assembly may have passed enabling legislation, authorizing some compensation to hotel and motel operators in other counties, does not, in our opinion, invalidate the statute under consideration. We have examined numerous private acts cited by appellant.[2] Each of these authorizes a local, county tax. None purports to be statewide in application, and the statutes vary widely in the amount of taxes authorized and the purposes for which they are to be expended. Appellant has not seriously advanced an equal protection argument in this case. In view of the fact that each of the other statutes cited by him is local in nature, permissive in character, and authorized for particular local governmental purposes, we find no basis for invalidating the present statute. It does not involve a uniform statewide system of taxation, and appellant does not question the authority of the legislature to impose the tax. We do not find that it constitutes invidious class legislation. *Cf. Stalcup v. City of Gatlinburg*, 577 S.W.2d 439 (Tenn.1978).

2. Tenn. Private Acts 1978, ch. 102 (Blount County);
Tenn. Private Acts 1979, ch. 167 (Montgomery County);
Tenn. Private Acts 1979, ch. 118 (Putnam County);
Tenn. Private Acts 1979, ch. 114 (Williamson County);
Tenn. Private Acts 1974, ch. 169 (Van Buren County);
Tenn. Private Acts 1972, ch. 232 (Loudon County);
Tenn. Private Acts 1969, ch. 131 (Shelby County).

The judgment of the trial court is affirmed at the cost of appellant. The cause is remanded to the trial court for collection of costs accrued there.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.