The Honorable Becky Lynn State Representative P.O. Box 450 Heber Springs, Arkansas 72543
Dear Representative Lynn:
This is in response to your request for an opinion regarding Cleburne County's liability, if any, to reimburse a vendor for sales taxes imposed under the Arkansas Gross Receipts Act of 1941, A.C.A. §§ 26-52-101 to26-52-515 (1987, Cum. Supp. 1993, and Pamphlet March 1995) (the "Gross Receipts Act"), relating to transactions occurring in the years 1992 through 1995. Although it is not entirely clear from your request, it appears that the county purchased computer equipment from a vendor in at least one transaction in each of 1992, 1993, 1994, and 1995. In none of these transactions did the vendor collect from the county the amount of the state gross receipts, or sales, tax due thereon, and the county did not pay the tax directly to the state under A.C.A. § 26-52-509 (Cum. Supp. 1993) or otherwise. It appears that the county's purchases were, in fact, subject to the sales tax, and the vendor has submitted to the county for payment a claim for the aggregate amount of sales tax due on the purchases. You have requested an opinion on whether the county is legally responsible to pay the claim even though no demand was made until March 27, 1995, and whether the fact that certain of the purchases were made through a bid process has any effect upon the county's legal responsibility to pay those portions of the claim arising from bid purchases.
Arkansas Code Annotated § 26-52-508(c) provides that "[t]he seller [of tangible personal property] shall collect the tax levied from the purchaser." See also Cook v. Sears-Roebuck Co., 212 Ark. 308,206 S.W.2d 20 (1947) (holding that the purchaser, not the seller, is ultimately responsible for the state sales tax). It is clear, then, that the county, as purchaser, would have been liable for the payment of the tax had the tax been included in the vendor's bid or invoice rendered at the time of the purchases.
There appears to be no Arkansas statute, case or attorney general's opinion addressing a purchaser's obligation to pay sales tax to a seller in a case where the seller has not collected the tax from the purchaser at the time of the sale, or at least attempted to collect the tax at the time the purchase price was due under the agreement between the parties. The weight of authority from other states, however, appears to be that where the statute makes it mandatory for the seller to collect the tax from the buyer, the buyer is liable to the seller for the amount of the tax, notwithstanding the parties' failure to contract therefor or the seller's failure to demand payment thereof at the time of purchase. UrbanConstr. Co., Inc. v. Seattle Urban League, 12 Wash. App. 935,533 P.2d 392 (1975); Reaves Becker Co. v. Wilkes Co., 392 S.W.2d 379
(Tex.Civ.App. 1965); Woodrich v. St. Catherine Gravel Co., 188 Miss. 417,193 So. 307 (1940). See generally 67 Am.Jur.2d Sales § 314; 127 A.L.R. 1179.
The Supreme Court of Arkansas has held to the same effect in a case where the purchaser refused to pay notwithstanding the seller's demands. InArkansas Power Light Co. v. Roth, 193 Ark. 1015, 104 S.W.2d 207
(1937), an electric utility contracted to supply power to a rice farmer for use in producing a crop. As the farmer was unable to pay monthly, the utility took a chattel mortgage on the crop to secure payment of the purchase price from the proceeds of the crop. While the contract did not expressly provide for the farmer's payment of state sales taxes imposed under Act 233 of 1935 (now repealed), it did contain a provision obligating the farmer to pay increased rates in the event of the imposition of "additional" taxes. When the crop was made, the farmer paid all of the account except the state sales tax. The utility refused to release the mortgage, and the farmer sued.
The court held that the farmer, under the contract provision mentioned above, had agreed to pay the sales tax, but that he would be liable for the tax even in the absence of an agreement on the subject. The court cited provisions of Act 233 of 1935 requiring sellers to collect the tax from purchasers and to pay the tax themselves upon their neglect, failure, or refusal to collect the same, and prohibiting sellers from assuming or absorbing the tax, as authority for the proposition that the tax was the ultimate responsibility of the buyer and a debt owing by the buyer to the seller. The court recognized that the utility may have been in technical violation of the act when it failed to collect payment from the farmer at least monthly (the act required sellers to remit payments to the state monthly), but stated that the violation would neither "relieve [the utility] from liability for failure to collect" nor "have the effect of relieving [the farmer] from liability to pay the tax. The tax was a part of the sales price and is, therefore, a part of the debt secured by the mortgage. . . ." Roth, 193 Ark. at 1019.
In my opinion, Roth is controlling in the fact situation stated in your request, laying aside for the moment any question of the impact of the use of a bid process. Although Roth arose under Act 233 of 1935, and not under the Gross Receipts Act, I perceive no substantive difference between the relevant provisions of the two acts. It is true that nothing in the Gross Receipts Act expressly makes the seller liable for the tax if he fails to collect it from the buyer, a provision of Act 233 of 1935 cited in the Roth opinion. As a practical matter, however, the seller must be so liable or the sales tax could be avoided and would be paid by no one, at least in those instances where the seller has no record of the buyer's name, by the simple expedient of the seller's failure to collect the tax. "The enforcement of the law would be impracticable if the Commissioner were required to collect from the consumer, for obvious reasons." Roth, 193 Ark. at 1018. In addition, Rule GR-74 of the regulations of the Arkansas Department of Finance and Administration provides that the seller is liable for the tax if an allegedly exempt transaction does not in fact qualify for an exemption.[1]
It is also true that nothing in the Gross Receipts Act expressly prohibits the seller from absorbing or assuming the tax, another provision of Act 233 of 1935 cited in the Roth opinion. It appears in fact that some merchants may do just that, at least on occasion (for example, in "sales tax paid" automobile promotions). Sellers surely do so at their own peril, however, the statute providing that the seller "shall collect" the tax from the buyer. A.C.A. § 26-52-508(c).
Nothing in the Gross Receipts Act or any of the cases cited herein suggests that a seller's delay in demanding payment of sales tax will excuse the purchaser from its duty to pay. In the case of litigation, of course, the seller's claim may well be barred by an applicable statute of limitations after a prolonged delay. It appears that, in Arkansas, the applicable limitations period would be three years, pursuant to A.C.A. §16-56-105(3), as the action likely would be characterized as one founded on an implied liability. As the Roth court stated, the buyer's obligation to pay sales tax is "implied by law." Roth, 193 Ark. at 1017.
In sum, it is my opinion that a buyer generally is liable to a seller to remit the amount of tax due under the Gross Receipts Act, notwithstanding the absence of any agreement on the buyer's part to pay the tax or the seller's failure to demand payment of the tax at the time of payment of the purchase price. As noted above, a seller's prolonged delay in making demand may, in the event of litigation, enable the purchaser successfully to assert a statute of limitations defense.
I am unable to render a conclusive opinion about the impact, if any, the county's use of a bid process has upon the county's obligation. It appears that the county's use of a bid process, as required by A.C.A. §§14-22-101 to 14-22-115 (1987 and Cum. Supp. 1993), generally would not, in and of itself, affect the county's obligation to pay the tax. In my view, however, the particular facts and circumstances surrounding the actual bid process undertaken in connection with each purchase, including the content of the county's requests for bids and of the vendor's responses, would be relevant, and perhaps determinative, of the county's obligation in each case.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] The Rule continues: "Sellers are, therefore, encouraged to obtain indemnification agreements from their customers claiming exemption." While this language suggests that buyers may not be liable in the absence of an agreement, the Rule does not expressly so indicate, and Roth states otherwise. At any rate, sellers are probably well-advised to obtain such agreements to avoid situations like the one at issue here.