MAXWELL, J.,
for the Court:
¶ 1. “It is basic tort law that before one can be found negligent he must owe a duty to the injured party.”[1] Here, Jane Doe, the manager of Shadowbrook Apartments, sued Hunter Oaks Apartments L.P., an adjacent apartment complex, alleging the brother of one of Hunter Oaks’ tenants went through a hole in Shadowbrook’s fence and sexually assaulted Doe in Sha-dowbrook’s office. Doe sought to hold Hunter Oaks liable for her assailant’s criminal act because it did not evict the attacker’s brother or repair the hole in Shadowbrook’s fence. The circuit court granted summary judgment in favor of Hunter Oaks on Doe’s negligence claim, finding Hunter Oaks owed her no duty.
¶ 2. On appeal, we find Hunter Oaks’ alleged failure to act can only support a claim of breach of duty if Hunter Oaks owed Doe a duty to act. And because Hunter Oaks had neither an existing duty nor a voluntarily assumed duty to control the conduct of Doe’s assailant outside its premises, we affirm the grant of summary judgment in favor of Hunter Oaks.
Background
¶ 3. Hunter Oaks leased an-apartment to Joe Beard and his mother. Joe’s brother, Matthew Beard, though not on the lease, often stayed with Joe in the apartment. Apparently the Beard brothers were part of a group of loiterers who lived in “the back” of Hunter Oaks. They were also frequent trespassers on Shadowbrook’s property, accessing the property through a hole in Shadowbrook’s wooden fence that separated the two apartment complexes. According to Doe, she complained to Hunter Oaks’ property manager, Lee Reese, about the trespassers and their drug activity on Shadowbrook’s property. When Doe described the trespassers, Reese identified the Beard brothers as part of the group. Reese purportedly told Doe, “I’m going to take care of that; I’m cleaning up the riff-raff.” Based on this representation, Doe asserts she believed Reese meant Hunter Oaks was going to evict Joe.
¶ 4. A month later, Doe again spoke to Reese about the trespassers. Doe claimed Shadowbrook had just repaired the fence, only for the hole to immediately reappear. When Doe again complained to Reese about the fence, Reese assured her not to worry because Hunter Oaks was “getting rid of’ the troublemakers.
¶ 5. The day before the assault, one of the trespassers came onto Shadowbrook’s property. He entered Doe’s office and asked if he could use her restroom. Doe thought he had an ulterior motive because he acted suspiciously and immediately left when one of the groundskeepers entered the office. Believing the trespasser had *425 been “casing” the office, Doe called her supervisor and told her to anticipate a robbery that night. Doe also called Sha-dowbrook’s courtesy officer and the Clinton Police Department. One of the police officers who took her complaint was also a courtesy officer for Hunter Oaks. He identified the trespasser as Matthew, one of the troublemakers who lived in Hunter Oaks. Early the next day, Matthew returned to Shadowbrook’s office and sexually assaulted Doe at gunpoint.
¶ 6. Doe sued Hunter Oaks for negligence.[2] The Hinds County Circuit Court granted Hunter Oaks summary judgment. The circuit court found Doe failed to show Hunter Oaks owed her “a definable legal duty.” Specifically, the circuit court found: “Mississippi law does not impose a duty on the management of Hunter Oaks to remove any individual from Hunter Oaks property at the request of the Plaintiff,” and “any conversations between ... Jane Doe and the manager of Hunter Oaks did not as a matter of law impose any duty on the part of Hunter Oaks to Jane Doe.”
¶ 7. Doe timely appealed.
Standard of Review
¶ 8. We review grants of summary judgment de novo, employing the same standard as the trial court. If all evidence before the court, viewed in the light most favorable to the non-moving party, shows the moving party is entitled to a judgment as a matter of law, summary judgment should be granted. M.R.C.P. 56(c); Clark v. Moore Mem’l United Methodist Church, 538 So.2d 760, 762 (Miss.1989) (citation omitted). We also review questions of law de novo. Belmont Homes, Inc. v. Stewart, 792 So.2d 229, 232 (¶ 11) (Miss.2001) (citing In re Estate of Bodman, 674 So.2d 1245, 1247 (Miss.1996)).
¶ 9. The circuit court granted summary judgment, finding, as a matter of law, Hunter Oaks owed no duty to Doe. Whether a duty exists in a negligence case is a question of law to be determined by the court, not a question of fact for the jury. Kimbrough v. Keenum, 68 So.3d 738, 740 (¶ 11) (Miss.Ct.App.2011).
Discussion
¶ 10. No one disputes Matthew assaulted Doe and caused her injuries.[3] Instead, our inquiry focuses on the duty element of negligence.[4] The particular question we must decide is whether Hunter Oaks had a duty to control Matthew’s conduct and prevent him from assaulting Doe.
¶ 11. Hunter Oaks certainly did not have an existing duty to control Matthew or protect Doe from Matthew’s criminal acts, which did not occur on Hunter Oaks’ premises. But Doe argues Hunter Oaks, nonetheless, assumed a duty through Reese’s promises to clean up “the riff-raff” from Hunter Oaks’ property and to repair the fence.
*426 I. When a Legal Duty Exists
¶ 12. “Common law traditionally has not imposed a broad duty upon individuals to control the conduct of others.” Warren ex rel. Warren v. Glascoe, 852 So.2d 634, 639 (¶ 17) (Miss.Ct.App.2003) (citation and quotation omitted). The Restatement (Second) of Torts § 315 (1965) illustrates:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
Neither such relationship existed here.

A. No Special Relationship Between Hunter Oaks and Matthew

¶ 13. In Mississippi, only those who “take charge” of a third party have the duty to control that third party’s criminal acts. Doe v. State ex rel. Miss. Dept. of Corr., 859 So.2d 350, 359 (¶ 33) (Miss.2003) (citation omitted); see also Restatement (Second) of Torts § 319 (1965). And to “take charge” of a third party, one has to have “the ability to control another’s conduct.” Doe, 859 So.2d at 360 (¶ 33). “A person who does not have the ability to control another’s conduct should not have liability imposed upon him or her for the tortious act of that other person.” Id.
¶ 14. In Doe v. State, a rape victim sought to hold the Mississippi Department of Corrections (MDOC) liable because her attacker was a state parolee. But the Mississippi Supreme Court noted it was “a naive fiction to say parole officers have control over felons who are free on parole.” Id. Here, while Hunter Oaks’ manager said he was “taking care” of the trespassing problem and “getting rid” of the Beard brothers, Hunter Oaks did not have the ability to control Matthew’s actions. Hunter Oaks could have evicted Joe and instructed Matthew to stay off Hunter Oaks’ property. Yet it had no ability to control where Matthew went after he left Hunter Oaks’ property. Nor did it have the ability to prevent him from committing a crime off Hunter Oaks’ property. Drawing from Doe v. State, if the MDOC does not have the level of control over its parolees to impose liability for their criminal acts, Hunter Oaks, the mere landlord of Matthew’s brother, certainly did not have the requisite control to impose a duty upon the complex.

B. No Special Relationship Between Hunters Oaks and Doe

¶ 15. While not exclusive, the Restatement specifically lists four special relationships that give rise to a right of protection from a third party’s actions: (1) a common carrier and its passengers, (2) an innkeeper and his guests, (3) a landowner and his invitees, and (4) a custodian (such as a jailer or schoolteacher) and a person who is deprived “of his normal opportunities for protection” (such as a prisoner or kindergartner). Restatement (Second) of Torts § 314A (1965). Hunter Oaks was in none of those relationships with Doe.
¶ 16. Hunter Oaks is a landowner. And as such, it “owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another.” Simpson v. Boyd, 880 So.2d 1047, 1051 (¶ 14) (Miss.2004) (citing Newell v. S. Jitney Jungle Co., 830 So.2d 621, 623 (¶ 6) (Miss.2002)). But Doe was not an invitee of Hunter Oaks when she was attacke d. Doe admits the assault occurred on Shadowbrook’s premises, not Hunter Oaks’.
*427 ¶ 17. We recently refused to extend a landowner’s duty to protect beyond “property neither owned nor controlled by the landlord.” Kimbrough, 68 So.3d at 740 (¶ 12). In Kimbrough, the victims of a pit-bull attack sued the landowner of the property where the dogs had been kept. Neither the landowner nor her tenant owned the dogs — they belonged to the tenant’s boyfriend. And the attack did not occur on the landowner’s property. Because the landowner neither controlled the dogs nor the property where the attack occurred, this court held, as a matter of law, the landowner owed the victims no duty. Id. at 741 (¶ 15).
¶ 18. Like Kimbrough, in addition to not controlling Matthew, Hunter Oaks had no control over Shadowbrook, where the assault occurred. So Hunter Oaks was not in a special landowner-invitee relationship giving rise to a duty to protect Doe.
II. When a Legal Duty Is Assumed
¶ 19. Doe argues that, while no duty arose out of a special relationship between Hunter Oaks and Matthew or Hunter Oaks and Doe, Hunter Oaks assumed a duty. Doe claims Hunter Oaks assumed a duty to evict Joe and keep the Beards off both Hunter Oaks’ and Shadow-brook’s property when Reese assured Doe he was going to “get [the Beards] off the property” and “take care of the problem.” And by once repairing the hole in Shadow-brook’s fence, Doe claims Hunter Oaks assumed the duty to maintain the fence to keep its tenants from accessing Shadow-brook’s property. But Doe fails to show detrimental reliance on Reese’s promises — a requirement for a gratuitous promise to create a legal duty — or that preventing Matthew from assaulting Doe off Hunter Oaks’ premises fell within the scope of any promise undertaken by Reese.

A. No Detrimental Reliance

¶ 20. A duty can be assumed either by contract or by a gratuitous promise that induces detrimental reliance. Doe ex. rel Doe v. Wright Sec. Servs., Inc., 950 So.2d 1076, 1080 (¶ 13) (Miss.Ct.App.2007) (citations omitted); Wagner v. Mattiace Co., 938 So.2d 879, 885 (¶ 20) (Miss.Ct.App.2006). While Doe partly relies on Doe v. Wright Security, that case concerns a duty assumed through a contract. Here, Doe presented no evidence that Hunter Oaks entered any contract for which she was a third-party beneficiary. Cf. Doe, 950 So.2d at 1081 (¶ 15) (holding a security company, which entered a contract with a school district to monitor a bus stop, contractually obligated itself to a duty to protect the students as third-party beneficiaries). So if a duty was assumed, it had to be assumed through a gratuitous promise by Reese, as Hunter Oaks’ agent — which means Doe had to show detrimental reliance.
¶ 21. The mere promise to act does not create a duty to act. Wagner, 938 So.2d at 886 (¶ 24) (citing Restatement (First) of Agency § 378 (1933)). The promise to act must induce detrimental reliance for liability to arise. “[F]or a party to be held liable for negligent performance of a gratuitous or voluntary act, the plaintiff must .show detrimental reliance on the performance.” Id. at 885 (¶21) (citing Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1147 (¶ 41) (Miss.2004); Century 21 Deep S. Props, v. Corson, 612 So.2d 359, 368-69 (Miss.1992); Higgins Lumber Co. v. Rosamond, 217 Miss. 1, 8, 63 So.2d 408, 410 (1953)).
¶ 22. There is no evidence Doe detrimentally relied on Reese’s assurances. Doe did not forego any security measures already in place in light of Reese’s comments. Nor did she refrain from trying to *428 keep the trespassers off Shadowbrook’s property. According to Doe’s deposition testimony, the day before the attack, Doe alerted her supervisor, Shadowbrook’s courtesy officer, and the Clinton Police Department about Matthew’s coming into the office. So Doe cannot show she forwent any security measures in reliance on an assumed duty by Hunter Oaks. See Rein, 865 So.2d at 1147 (¶ 41) (holding a landscaper owed no assumed duty to provide pest control because the property owner “was not induced to forego other methods of pest control in reliance on any assumed duty by [the landscaper]”).
¶ 23. Similarly, without detrimental reliance, providing a gratuitous service in the past does not create a duty to continuously perform the service in the future. Wagner, 938 So.2d at 886 (¶ 24) (citation omitted). While Doe presented some evidence that Hunter Oaks once repaired the fence in the past, there was also evidence Sha-dowbrook had more recently repaired the fence. So Doe cannot show that Shadow-brook forewent further repair of the fence in detrimental reliance that Hunter Oaks would continue to make repairs.

B. Not Within the Scope of the Undertaking

¶ 24. Even if Doe can show an assumed duty based on detrimental reb-anee, the assumed duty is limited to the scope of the gratuitous undertaking. Wagner, 938 So.2d at 885 (¶ 21). This is different from an existing duty (i.e., a duty that arises out of a special relationship), in which the existence of a duty to act is determined by the reasonable foreseeability of the injury. Id. at 884 (¶ 17), 886 (¶ 22). With an assumed duty, “foreseeability [of the injury] is not a factor to consider when determining if a duty is voluntarily assumed[.]” Id. at 884 (¶ 17). Even if the party who assumed a duty reasonably foresees that its failure to act will cause injury, it will not be held liable if the failed action is not within scope of the duty assumed. See id. at 885-86 (¶¶ 21-22).
¶ 25. For example, Wagner was a slip- and-fall case in which the plaintiff sued, among other parties, the company that had cleaned and made a few repairs to the location where the plaintiff fell, before the lessee had moved in. The plaintiff alleged she fell on a ridge in the floor, left when the old lessee, a grocery store, moved its shelving units out. She claimed the cleaning company had assumed the duty to remove the ridge because it was reasonably foreseeable she would be injured if the ridge was not removed. Id. at 886 (¶ 22). But this court rejected that logic. Because the issue was an assumed duty, we found the cleaning company’s duty was limited to the scope of its undertaking, which did not include removing the ridges from the floor. Id. at (¶ 23). And because the plaintiff “did not allege that breach of any of these assumed duties caused her injuries,” her claim against the cleaning company failed. Id.
¶ 26. So even if Hunter Oaks, through Reese’s gratuitous promises, assumed a duty to evict Joe and, through previous repair of the fence, assumed a duty to continue to repair the fence, its duties were limited to those tasks. Doe places a great deal of emphasis on what Reese knew or should have known about: (1) the hole in the fence, (2) Matthew’s living in Joe’s apartment, and (3) Joe’s criminal background. But what Reese knew or should have known goes to the issue of foreseeability, which is not relevant in determining whether an assumed duty exists. See id. at 884 (¶ 17), 886 (¶ 22); see also Kimbrough, 68 So.3d at 741 (¶ 15) (finding that, because the landlord owed no duty to the dog-attack victims injured off premises by a third-party’s dogs, the issue of wheth *429 er the landlord knew the dogs were dangerous was moot). Consequently, what Reese reasonably foresaw would happen if the Beard brothers were not evicted or the fence was not repaired is also irrelevant.
¶27. Instead, the relevant inquiry is whether Doe alleged that the breach of any of Hunter Oaks’ duties caused her injuries. See Wagner, 938 So.2d at 886 (¶ 23). Doe’s injuries were caused by the criminal acts of Matthew. While Hunter Oaks may have assumed a duty to evict Joe and, consequently, Matthew, it did not assume the duty to undertake the type of control over Matthew required to impose liability for his criminal actions. And while Hunter Oaks may have promised to make its premises safer by removing tenants who were also trespassing on Sha-dowbrook’s property and repairing the fence through which tenants had trespassed, it did not undertake to protect Doe from Matthew’s criminal acts performed off its premises.
¶28. The victims in Kimbrough had also argued assumption of duty, based on the landlord’s admission in her deposition that she had a duty to protect her neighbors from the dogs on her property. Kimbrough, 68 So.3d at 741 (¶ 16). But this court rejected that argument since there was no evidence the landlord had contractually or voluntarily assumed a duty to control the dogs. Id. The same is true here. There is no evidence Hunter Oaks voluntarily assumed the level of control of Matthew or protection of Doe to make it liable for Matthew’s criminal actions.
¶ 29. Because Doe failed to establish the existence or assumption of a duty owed to her by Hunter Oaks in relation to Matthew’s criminal attack, we affirm the circuit court’s grant of summary judgment in favor of Hunter Oaks on Doe’s negligence claim.
¶ 30. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. Century 21 Deep S. Properties, Ltd. v. Corson, 612 So.2d 359, 368 (Miss.1992).

. Doe also sued Shadowbrook, who settled, and Shadowbrook’s management company and her supervisor, who were both dismissed based on the exclusive remedy provided under workers’ compensation law, leaving Hunter Oaks as the only defendant.

. Matthew was convicted of sexual battery and is currently serving a twelve-year sentence.

.“It is well settled that to prevail on a negligence claim, a plaintiff must prove, by a preponderance of the evidence, duty or standard of care, breach, causation and damages. [And][s]ummary judgment is appropriate where the nonmoving party cannot make a prima facie showing of all of the elements of his or her claim.” Huynh v. Phillips, 95 So.3d 1259, 1262 (¶ 9) (Miss.2012) (citations omitted).