# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01068-COA

**WAYNE BOOTH**                                                                   **APPELLANT**

**v.**

**SOUTHERN HENS, INC.**                                                           **APPELLEE**

DATE OF JUDGMENT:               07/07/2016
TRIAL JUDGE:                    HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:      JONES COUNTY CIRCUIT COURT,
                                FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:         ORVIS A. SHIYOU JR.
ATTORNEY FOR APPELLEE:          MARK EDWARD NORTON
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    AFFIRMED - 02/13/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### BARNES, J., FOR THE COURT:

¶1.     Wayne Booth appeals the Circuit Court of Jones County's grant of summary judgment

to Southern Hens Inc. Booth was a truck driver employed by Whitestone Trucking, which

was an independent-contract hauler for products made by Southern Hens. Booth sued

Southern Hens for negligence, gross negligence, and failure to supervise for injuries

stemming from a horseplaying incident where an employee of Southern Hens "bear hugged"

Booth and threw him into some pallets at work. Finding no error, we affirm the circuit

court's judgment.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     On October 30, 2012, Booth, working as a truck driver for Whitestone, went to

Southern Hens to pick up a trailer. After checking in and hooking up the trailer, Booth went to the shipping office. While waiting on paperwork, Jerome (A.J.) Caldwell, an employee of Southern Hens, grabbed Booth from behind his midsection in a "bear hug." Booth tried to get loose but could not. Booth claimed a supervisor, Rod, said something to the effect of "give it up" and "he got you dog" to Booth. Then Booth contended that Caldwell slung him against some boxes and pushed him through a doorway onto a stack of pallets. When Booth was able to get up and reenter the shipping area, Booth said Rod and other Southern Hens employees were laughing and joking about the incident. Booth was told that Caldwell was "just playing." However, Booth claimed that Caldwell's actions caused serious injuries to his back that required medical treatment. Further, Booth claimed he was unable to return to work due to the injuries. Caldwell was terminated as a result of the incident.

¶3. On April 8, 2013, Booth sued Southern Hens, claiming negligence and failure to supervise; Southern Hens failed to exercise reasonable care and control over its employees resulting in Booth's injuries.[1] In May 2016, Southern Hens filed a motion for summary judgment, arguing that the horseplay incident was not "an authorized act within the scope of [Caldwell's] employment," Southern Hens specifically prohibited these acts, and it had no reason to believe Caldwell would engage in this conduct. Southern Hens concluded that it

---

[1] The circuit court granted a motion to intervene, filed by Mississippi Trucking Food & Fuel, a self-insured workers' compensation fund authorized by legislation. Whitestone secured workers' compensation coverage through the fund, and as of March 2014 the fund had paid Booth $19,213.92 in indemnity benefits and $15,528.04 in medical expenses and benefits. The fund also continued paying medical benefits as they became due. In the motion, the fund requested reimbursement from any recovery proceeds from Booth's lawsuit.

could not be held vicariously liable for Caldwell's actions.

¶4.     The circuit court agreed, focusing on the claim of negligent failure to supervise. The court found that the on-duty supervisor, Rod, had no reason to anticipate that Caldwell would behave in such a sudden, violent manner. Further, the court found no evidence Southern Hens had actual or constructive knowledge that Caldwell had any dangerous or violent tendencies. Accordingly, there was no genuine issue of material fact for any negligence claim, and summary judgment was granted for Southern Hens. Booth appeals.

## STANDARD OF REVIEW

¶5.     The standard of review for a trial court's grant or denial of summary judgment is de novo, viewing the evidence in the light most favorable to the nonmoving party. *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at (¶10) (quoting M.R.C.P. 56(c)). Once made, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting M.R.C.P. 56(e)).

## ANALYSIS

¶6.     Booth argues there were genuine issues of material fact about whether Caldwell was acting in the course and scope of his employment during the incident. Also, Booth argues

Southern Hens failed to supervise its employees, thereby breaching a duty, which caused injury to Booth. We shall discuss each issue in turn.

### I. Course and Scope of Employment

¶7. Booth argues there were genuine issues of material fact as to whether Caldwell was acting within the course and scope of his employment with Southern Hens when he bear-hugged Booth and shoved him into the pallets.

¶8. It is well established that under the doctrine of respondeat superior, an employer is liable for an employee's acts done in the course and scope of his employment and in furtherance of the employer's business. *Children's Med. Grp. P.A. v. Phillips*, 940 So. 2d 931, 935 (¶13) (Miss. 2006) (citation omitted). Conduct of an employee falls within the scope of employment if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Id.* (quoting Restatement (2d) of Agency § 228(1) (1958)). Alternatively, an employee's conduct is not considered in the course and scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the [employer]." *Id.* (quoting Restatement (2d) of Agency §228(2)). Moreover, an employer is not liable for the "wrongful deed" of his employee if, "when the wrongful act was committed, [the employee] had abandoned his employment and gone about

4

some purpose of his own not incident to his employment." *Partridge v. Harvey*, 805 So. 2d 668, 670 (¶5) (Miss. Ct. App. 2002) (quoting *Horton v. Jones*, 208 Miss. 257, 261, 44 So. 2d 397, 399 (1950)).

¶9. The trial court correctly found Caldwell's conduct in bear-hugging Booth and shoving him into a stack of pallets was outside the course and scope of Caldwell's employment at Southern Hens. Caldwell's actions were not performed as a means to accomplish the purposes of his employment – loading and unloading shipments; therefore, there was no genuine issue of material fact regarding any claim of negligence.

¶10. Initially, Booth argues that he, as an invitee, was properly present and performing his duties for Whitestone when the incident occurred; he was not separated from Southern Hens by the incident. However, Caldwell's conduct is at issue, not Booth's. Booth then claims that there is a question of fact as to whether Caldwell stepped outside the scope of his employment during the incident.

¶11. We are not persuaded by Booth's argument. At the time of the incident, Caldwell was a laborer in the shipping department for Southern Hens, loading and unloading shipments. Bear-hugging and shoving a truck driver is conduct outside of his job. Further, it was unauthorized horseplay or physical assault prohibited by Southern Hens' employment rules. Accordingly, the incident was not within the course and scope of Caldwell's employment; thus, Southern Hens cannot be liable for it.

## II. Failure to Supervise

¶12. Booth next argues that Southern Hens had a duty to supervise Caldwell, and failed to

5

do so, thereby causing injury to Booth.

¶13.    "[A] premises owner must employ reasonable care to protect an invitee from 'reasonably foreseeable injuries at the hands of another.'" *Stribling v. Rushing's Inc.*, 115 So. 3d 103, 105 (¶9) (Miss. Ct. App. 2013) (citations omitted). An assault on the premises of a business is reasonably foreseeable if the defendant had "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge an atmosphere of violence existed on the premises." *Id.* at (¶10). "[S]pecific evidence of an employer's actual or constructive knowledge of its employee's dangerous or violent tendencies is necessary in order to create a genuine issue of material fact on an improper training or supervision theory of liability." *Holmes v. Campbell Props. Inc.*, 47 So. 3d 721, 729 (¶27) (Miss. Ct. App. 2010).

¶14.    Here, the trial court found no genuine issue of material fact that Southern Hens had actual or constructive knowledge of any dangerous tendencies of Caldwell, or that it failed to supervise Caldwell. We agree and, like the trial court, find instructive this Court's decision in *Holmes*. There, a customer at a car wash was beaten in the head by an employee of the car wash after calling the employee a "weak bit--." The customer later died of his injuries. *Id.* at 723 (¶3). The customer's estate sued under various torts, including premises-liability and failure-to-train claims.[2] *Id.* at (¶4). This Court affirmed summary judgment for the car-wash company. *Id.* at (¶2). For the premises-liability claim, the car-wash company had no reason to believe its employee would ever be dangerous, and no evidence was offered

---

[2] Failure-to-train and failure-to-supervise claims are both negligence based and analyzed in the same manner. *Holmes*, 47 So. 3d at 726 n.7, 729 (¶27).

to the contrary. *Id.* at 725 (¶15). Additionally, under the failure-to-train claim, the assault was not reasonably foreseeable because it occurred within a matter of seconds.[3] Evidence showed the incident happened without warning, and the car-wash management "had no reason to know or anticipate its employee would behave in such a violent manner." Nor was there any knowledge that an atmosphere of violence existed at the car wash. *Id.* at 729 (¶28).

¶15. Here, there is no evidence that either Southern Hens or Rod, the on-duty supervisor in the shipping department, had any reason to anticipate Caldwell's violent actions. The incident was without warning and occurred in a matter of seconds. Further, Caldwell had no history of dangerous or violent tendencies at work, nor was there any evidence presented that the atmosphere at Southern Hens was violent.

¶16. Booth claims that Rod had knowledge of what was happening but failed to take action against it; Rod had ample time to intervene, and instead of telling Caldwell to "give it up," he should have said "stop." However, in Booth's deposition, he stated at the time he thought Caldwell was just "teasing" and "playing," and nothing like this incident had occurred before with Caldwell. Further, the record shows the incident occurred rapidly. Moreover, Rod's statement to "give it up" could be interpreted as saying "stop." Caldwell was fully aware that

---

[3] This Court distinguished the Fifth's Circuit decision in *Foradori v. Harris*, 523 F. 3d 477 (5th Cir. 2008), cited by the appellant in *Holmes* in support of her argument. In *Foradori*, the Court affirmed the district court submitting to the jury the negligence claim of failure to train, supervise, or regulate employees. *Id.* at 491, 494-97. A verbal argument occurred inside a restaurant between an off-duty employee and customer. The lengthy argument was witnessed by the restaurant manager; however, "[s]he did not investigate, intervene, or exercise her authority to control the off-duty workers and protect [the customer] from harm." Instead, she asked the employee and customer to go outside, where the customer was punched and fell, breaking his neck and severing his spine. *Id.* at 482.

7

the general safety rules of Southern Hens specifically prohibited fighting, physically threatening others, "horseplay," and practical joking. He also signed an orientation checklist stating he understood "horseplay" was "not tolerated." This evidence does not indicate a failure to train or supervise.

¶17. Accordingly, we affirm the trial court's grant of summary judgment in favor of Southern Hens.

¶18. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**