# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00365-COA

| | |
|---|---|
| KYLIE BROWNING HILL, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF WILLIAM CAROL BROWNING, DECEASED | APPELLANT |
| v. | |
| JANICE MOORE, MTD HOLDINGS INC. F/K/A MTD PRODUCTS INC. D/B/A MTD CONSUMER GROUP INC., AND THE HAMILTON-RYKER GROUP INC. | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2019 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MARK ANTHONY LAMBERT |
| ATTORNEYS FOR APPELLEES: | ROBERT F. STACY JR. |
| | SAM STARNES THOMAS |
| | TIFFANY NICOLE CAREY |
| | OWEN PATRICK TERRY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/11/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     On March 27, 2015, William Browning was killed in a head-on collision with a vehicle driven by Yolanda Wofford (a/k/a Yolanda Keeton). Wofford, a temporary employee assigned to MTD Holdings Inc. (MTD) by Hamilton-Ryker, a staffing agency, had just finished her work-shift and was driving home. According to the Mississippi Highway

Patrol's accident report, Wofford tested positive for "nicotine, acetaminophen, caffeine, diphenhydramine, tramadol, fluconazole, hydrocodone and metabolite, alprazolam and metabolite, clonazepam metabolite and oxycodone" after the accident.

¶2. According to an affidavit by MTD's on-site nurse, Janice Moore, Wofford had apparently "hit the floor" right before the end of her shift that day. However, when Moore responded, Wofford was sitting up and conscious; Moore never saw her "on the floor or unconscious." Assuring Moore that she was "fine," Wofford said that "she suffered from insomnia and had slept very little the night before." Because Wofford's shift was almost over, Moore inquired whether Wofford had driven to work. Wofford told Moore that she had but that her sister and cousin had ridden with her to work, and they could drive her home. They went to the first-aid room, and someone who Moore believed was Wofford's "relative" came in. Moore spoke with the "relative" about driving Wofford home. Wofford clocked out and sat on a bench outside for a few minutes, and Moore believed that the "relative" would drive her home.[1] Thirty minutes later, Wofford was involved in the fatal vehicular accident with Browning.

¶3. On August 22, 2017, Kylie Browning Hill, as administrator of Browning's estate and individually, filed a suit for negligence against Wofford, MTD, Moore, and Hamilton-Ryker in the Chickasaw County Circuit Court.[2] MTD and Moore moved for summary judgment,

---

[1] The identity of this unknown "relative" was never determined.

[2] Wofford is not a party to this appeal. Where applicable, we will refer to the remaining parties (MTD, Moore, and Hamilton-Ryker) collectively as the "Appellees."

arguing that Hill could not "demonstrate any genuine issue of material fact that [they] owed any duty to prevent Wofford from leaving the premises." Hamilton-Ryker also filed a motion for summary judgment on April 25, 2018, asserting it was not liable because at the time of the accident (1) Wofford was not acting within the course and scope of her employment; (2) assuming Wofford was within the course and scope of her employment, she was subject to MTD's exclusive control and direction; and (3) even if Wofford was an employee of Hamilton-Ryker for liability purposes, Hamilton-Ryker had no duty to protect Browning from the alleged acts or omissions of Wofford by preventing her from leaving MTD's premises in her own vehicle.

¶4.     Hill opposed the motions, arguing that Moore "should have foreseen the dangers of letting Wofford drive her personal vehicle in her heavily intoxicated state" and that a "special relationship of employee and employer existed between Wofford and MTD, and the addition of employer's medical professional created an enhanced duty on the part of MTD." Hill also asserted that "[b]y contract and action, Hamilton-Ryker had assumed a duty to control its loaned employee." Hill did not file any supporting affidavits or evidence to support her response.[3]

¶5.     The circuit court granted the Appellees' summary judgment motions on December 28, 2018, finding "no genuine issue of material fact exists to show these [defendants] were

_____

[3] Although these responses were not included in the record until April 16, 2019, rebuttal memos from the Appellees indicate that the responses were received in November of 2018, before the court's judgment.

3

negligent." The court's order further held:

> This [c]ourt finds it is undisputed that Defendant Moore, an employee of [MTD], attempted to prevent Defendant Wofford from leaving the premises of [MTD] prior to the accident. Regardless, this Court finds even if Wofford was acting in the course and scope of employment at the time of the accident, and even if she was under the control of Hamilton-Ryker at that time, the [c]ourt finds the Plaintiff's claims fail because these Defendants had no duty to protect the decedent from the alleged negligence of Wofford by preventing Wofford from leaving MTD's premises.

The circuit court entered a Mississippi Rule of Civil Procedure 54(b) judgment of dismissal. Hill appeals, claiming the court erred in granting summary judgment in favor of the Appellees. Finding no error, we affirm.

## STANDARD OF REVIEW

¶6. We review a circuit court's grant or denial of summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party." *Booth v. S. Hens Inc.*, 244 So. 3d 888, 890 (¶5) (Miss. Ct. App. 2018) (citing *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Once the summary judgment motion is made, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

## DISCUSSION

4

*A.      MTD and Moore*

¶7.      Hill asserts that "this appeal turns on duty.  That is the only issue at bar."  Although conceding that "MTD owed no specific duty" to restrain Wofford from leaving, Hill insists MTD and Moore had "a broader, general duty to act as a reasonable and prudent person would have under the same and similar circumstances" and take measures to assure that Wofford posed no danger to herself or others.  Hill also argues that by taking the affirmative act of hiring an on-site nurse, MTD had assumed a special duty to Wofford and the general public.

¶8.      In order to prevail on a claim of negligence, a plaintiff must demonstrate that the defendant owed him a duty, that said duty was breached, that the breach caused the plaintiff injury, and that the plaintiff incurred damages.  *Wilbanks v. Hickman*, 198 So. 3d 393, 397 (¶10) (Miss. Ct. App. 2016).  "Whether a duty exists in a negligence case is a question of law to be determined by the court."  *McKean v. Yates Eng'g Corp.*, 210 So. 3d 1037, 1042 (¶19) (Miss. Ct. App. 2015).

¶9.      "Common law traditionally has not imposed a broad duty upon individuals to control the conduct of others."  *Doe v. Hunter Oaks Apartments L.P.*, 105 So. 3d 422, 426 (¶12) (Miss. Ct. App. 2013).  This Court has recognized that "[a] person who does not have the ability to control another's conduct should not have liability imposed upon him or her for the tortious act of that other person."  *Id*. at (¶13).  A duty to control a third person's conduct preventing him from causing physical harm arises only if "(a) a special relation exists

5

between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." *Id*. at (¶12). In the context of an employer/employee relationship, "[a]n action against an employer based on the doctrine of respondeat superior is a derivative claim arising solely out of the negligent conduct of its employee *within the scope of his or her employment*." *J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (¶19) (Miss. 2006) (emphasis added). Hill has not alleged that Wofford was acting in the course and scope of her employment at the time of the accident, and it is indisputed that Wofford had left work and was driving her own vehicle at the time of the accident. *See Matheson v. Favre*, 586 So. 2d 833, 834 (Miss. 1991) (holding that, generally, "an employee is not within the course and scope of his or her employment while driving to and from work").

¶10.    We find two cases from Tennessee persuasive on the issue of whether MTD and Moore owed any duty to either Wofford or Browning. In *Lett v. Collis Foods Inc.*, 60 S.W.3d 95, 97 (Tenn. Ct. App. 2001), an employee, Lynda Mills, arrived at work inebriated, and her employer, Collis Foods, "attempted, without success, to sober up Mills." Her condition did not improve; so another employee offered her a ride home. *Id*. at 98. Mills refused and left the premises. *Id*. While driving home, she collided with the plaintiff, JoAnne Lett, who later sued Collis Foods. *Id*. The Tennessee Court of Appeals held that the employer owed no duty to the plaintiff to control the conduct of the intoxicated employee "because the conduct occurred off-premises, while [the employee] was off-duty, and because

6

[the employer] did not contribute to, participate in, or seek to accommodate [the employee's] state of intoxication." *Id*. at 104. The appellate court further stated:

> Collis Foods had no legal right to tie [Mills] up or "sit on her" or otherwise prevent her from driving away in her own car. From a legal standpoint, it did not have the means or the ability to control its employee when she made the decision to drive a vehicle in her condition. . . . The employer's passive acquiescence in her leaving the premises and driving away in her own vehicle, acts they had no legal right to prevent, is simply not enough to impose a duty on this employer who was totally blameless in the condition—Mills'[s] intoxicated state—that led to the accident and the plaintiff's injuries. In our judgment, Collis Foods took no affirmative steps that contributed to or facilitated Mills'[s] negligent act—driving a motor vehicle while under the influence of an intoxicant.

*Id*. at 105 (emphasis added).

¶11.    In another case, *Williams v. Wal-Mart Stores East L.P.*, 832 F. Supp. 2d 923, 925 (E.D. Tenn. 2011), an employee, Lindsey Williams, was reported to have been sleeping on the job during a night shift. Her managers checked on her but noted nothing unusual—she was completing her tasks, albeit slowly. *Id*. The managers talked with her, and the employee explained that her mouth was hurting and that she had not gotten much sleep; so they asked if they could call someone to take her home. *Id*. The employee refused and clocked out of work, claiming she was okay to drive. *Id*. After Williams was killed in a single-car accident on the way home, her family filed suit, alleging negligence on the part of the employer. *Id*. Relying on *Lett*, the United States District Court for the Eastern District of Tennessee found Wal-Mart owed no duty to the employee and further concluded:

> If in fact, Wal-Mart owed Williams any duty to provide assistance, that duty was discharged by the actions of [the managers], who inquired about her

7

condition and offered to provide assistance in helping her get home, which Williams declined. Williams left the store under her own power. Wal-Mart had no legal right to prevent her from leaving. . . . [R]egardless of whether Williams was medically impaired or simply tired, and regardless of the length of time that her managers spoke to her before she left the premises, Wal-Mart did not owe a duty to prevent Williams from leaving the store. . . . Wal-Mart did not require Williams to drive home; in fact, it is undisputed that Wal-Mart offered to call someone to pick her up, but she refused and stated that she was okay to drive home. Wal-Mart did not provide Williams mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive.

*Id.* at 927-28. We find *Lett* and *Williams* in keeping with the Mississippi courts' "reluctan[ce] to extend liability in alcohol[-]related injury cases to persons who are not directly involved in causing the injury." *See Main v. Office Depot Inc.*, 914 F. Supp. 1413, 1419 (S.D. Miss. 1996) (discussing holdings in *Williams v. U.S. Fidelity & Guaranty Co.*, 854 F.2d 106 (5th Cir. 1988), *Cuevas v. Royal D'Iberville Hotel*, 498 So. 2d 346 (Miss. 1986), and *Boutwell v. Sullivan*, 469 So. 2d 526 (Miss. 1985)).

¶12. Hill has failed to demonstrate that MTD and Moore owed any duty to prevent Wofford from leaving the premises, especially considering there was no evidence that Moore knew Wofford was under the influence of any drugs. Moreover, as in *Lett* and *Williams*, even if Moore suspected Wofford was intoxicated, MTD and Moore still owed no duty to Browning under the law. They did not "contribute to, participate in, or seek to accommodate" any such intoxication. *See Lett*, 60 S.W.3d at 104.

¶13. Hill also contends that Moore should have watched to see if Wofford would drive her car "in defiance of Moore's warnings," at which point Moore "could have called the police

8

and advised that an intoxicated person was taking to the streets in a motor vehicle." To support her argument, Hill cites *Cullum v. McCool*, 432 S.W.3d 829 (Tenn. 2013), where a store's customer was injured in a parking lot accident with another patron who had been kicked out of the store for being intoxicated and belligerent. *Id*. at 831. The Tennessee Supreme Court, while acknowledging that it was "not ruling that businesses or their employees must 'call 911 for every blowhard drunk,'" held that "*in some cases*," a store employee *may* have a duty "to try to protect its patrons from known dangers[, and a] reasonable factfinder could determine that the specific foreseeability of harm posed by an intoxicated, belligerent patron certainly could outweigh the minimal burdens placed on store employees to call the police or take another alternative course of action, as opposed to doing nothing." *Id*. at 837 (emphasis added) (quoting *Del Lago Partners Inc. v. Smith*, 307 S.W.3d 762, 777 (Tex. 2010)). *Cullum*, a premises-liability action addressing a store owner's duty to its patrons, is distinguishable from the present case.[4] The accident here did not take place

---

[4] We also disagree with *Cullum*'s conflation of duty with foreseeability. "[F]oreseeability must not be confused with duty. The fact that a result may be foreseeable does not itself impose a duty in negligence terms." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012) (internal quotation marks omitted) (quoting *Ashburn v. Anne Arundel Cty.*, 510 A.2d 1078, 1083 (Md. 1986)). The Court of Appeals of Maryland has since reiterated this position, finding a bar owner did not owe a duty to a person injured by an intoxicated patron after leaving the premises:

> When the harm is caused by a third party, rather than the first person, as is the case here, our inquiry is not whether the harm was foreseeable, but, rather, whether the person or entity sued had control over the conduct of the third party who caused the harm by virtue of some special relationship . . . . In the absence of control, our jurisprudence is replete with holdings that, *regardless*

9

on MTD's premises, and Hill has cited no authority in a non-premises-liability context where courts have imposed a duty on an employer to call the police upon suspicion that its employee is driving home from work while impaired or fatigued. Nor have we found any.

¶14.    Although not addressing the duty of an employer to contact police, we do note that the Texas Supreme Court (in a 5-4 decision) has held that "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonable and prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex. 1983). In *Otis*, a supervisor noted an employee's inebriated condition at work and suggested that he go home, escorting the employee to the parking lot. *Id*. at 308. The employee said he could drive home, but, shortly thereafter, he was involved in an accident killing the plaintiffs' decedents. *Id*. The plaintiffs filed suit, contending that sending the employee home when the employer knew him to be intoxicated constituted an affirmative act that imposed a duty upon Otis to exercise due care. *Id*. The Texas Supreme Court concluded that the trier of fact should decide whether Otis

---

> *of any foreseeability, a duty does not exist to the general public, with respect to harm caused by a third party*, absent the existence of a special relationship between the person sued and the injured party or the person sued and the third party.

*Ware v. JMGM Group LLC*, 70 A.3d 347, 355 (Md. 2013) (emphasis added). As already discussed, MTD and Moore had no duty to control Wofford's conduct as she was not acting within the course and scope of her employment at the time of the accident.

10

acted as a reasonable and prudent employer and that summary judgment was not appropriate. *Id*. at 311.

¶15.    We find nothing in Mississippi jurisprudence imposing such a duty upon an employer. The United States Court of Appeals for the Fifth Circuit has held that "Mississippi law does not impose on employers a duty to supervise their employees when they are not working." *Williams*, 854 F.2d at 109. "The Restatement (2d) of Torts § 317 narrowly limits an employer's duty to control a servant's conduct outside the scope and place of employment to instances in which the servant is 'using a chattel of the master.' *The Mississippi legislature and courts have not suggested a broader compass*." *Id*. (emphasis added). The facts in the instant case do not present affirmative acts sufficient to impose a duty upon MTD or Moore.  Wofford was off-duty and acting outside the course, scope and place of her employment when the accident occurred.  MTD did not contribute to, condone, or seek to accommodate Wofford's impaired state.  And, unlike *Otis*, Moore did not require Wofford to drive but, instead, asked "a relative" to drive Wofford home.[5]

¶16.    Lastly, Hill urges this Court "to recognize a special duty inherent to the employer-employee relationship" where an employer hires an on-site health-care provider "for the specific purpose of tending to employees' health, fitness for duty, and ability to respect safety protocols." Hill notes that beyond a general duty of ordinary care, "[a] duty also exists where

---

[5] We note that the *Lett* court also declined to follow *Otis*, noting that the employee's conduct occurred off-premises and while she was off-duty.  *Lett*, 60 S.W.3d at 103.

11

a party contracts to undertake or otherwise assumes a duty." *Doe ex rel. Doe v. Wright Sec. Servs. Inc.*, 950 So. 2d 1076, 1080 (¶13) (Miss. Ct. App. 2007). She claims that this duty extends not only to Wofford, but to a third party such as Browning, the deceased. Hill, however, has not demonstrated how the affirmative act of employing an on-site healthcare professional imposes any greater legal obligation or duty on the part of MTD to its employee, Wofford, or the deceased, Browning, and we decline to impose one.[6] Furthermore, the United States Court of Appeals for the Fifth Circuit has recognized, "[N]either the Mississippi legislature nor its courts has imposed on employers a duty to supervise their premises so as to prevent employees from clandestinely consuming intoxicants or to prevent employees from going about their personal business in a state of inebriation." *Williams*, 854 F.2d at 109.

¶17. We find no error in the circuit court's grant of Moore's and MTD's motions for summary judgment.

    B.    *Hamilton-Ryker*

¶18. Hill also claims that Hamilton-Ryker voluntarily assumed a duty to control its

---

[6] Similarly, the Texas Supreme Court declined a plaintiff's request "to recognize a new duty on Texas employers whose work conditions may contribute to fatigue in an off-duty employee." *Nabors Drilling U.S.A. Inc. v. Escoto*, 288 S.W.3d 401, 410 (Tex. 2009). "Considering the large number of [employees] who do shift work and work long hours," such as doctors, nurses, and law enforcement, the *Nabors* court concluded that "there is little social or economic utility in requiring every employer to somehow prevent employee fatigue or take responsibility for the actions of off-duty, fatigued employees." *Id*. at 410-11.

employee, Wofford, through its contract with MTD.[7] To the contrary, the contract between

MTD and Hamilton-Ryker states that Hamilton-Ryker relinquished any such duty, providing:

> [MTD] will direct the performance of all services performed by an employee of Hamilton-Ryker during the tenure of such employee's assignment. Accordingly, [MTD] waives (on behalf of itself and its insurance companies to the extent any losses may be covered by insurance) any right of recovery against Hamilton-Ryker for any losses, costs, expenses or damages incurred by [MTD] arising out of the work or services provided by such employee of Hamilton-Ryker and, further, will indemnify, defend and hold Hamilton-Ryker harmless from any claims arising from the action or inaction of a Hamilton-Ryker employee, whether negligent or otherwise.

Furthermore, as the nonmovant, Hill bore the burden of "present[ing] affirmative evidence

that a genuine issue of material fact exist[ed]." *Hust v. Forrest Gen. Hosp.*, 762 So. 2d 298,

300 (¶4) (Miss. 2000). Hill submitted no evidence that Hamilton-Ryker (1) knew or should

have known Wofford was impaired in any way; (2) could have prevented Wofford from

leaving MTD's premises; or (3) could have foreseen that Wofford posed a risk to Browning.

We find no error in the circuit court's grant of Hamilton-Ryker's motion for summary

judgment.

¶19.   **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.  J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[7] Although Hill references language from Hamilton-Ryker's website in the appellant's brief as evidence of its duty to "control" its assigned employees, this information is not in the record and may not be considered on appeal. *See Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (¶3) (Miss. 2002) (holding that each case must be decided "by the facts shown in the record, not assertions in the brief").

**McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**