# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01111-COA

**LADNER INVESTMENTS INC.**                                      **APPELLANT**

**v.**

**MICHAEL CONWAY INC.**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2019 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID R. WADE |
| | JEFFREY GRAY BAKER HOUSTON |
| ATTORNEY FOR APPELLEE: | MICHAEL BRADY MITCHELL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 07/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Ladner Investments Inc. (Ladner) and its sister company are in the transportation and logging business. In 2010, Michael Conway Inc. (MCI) sold Ladner an inland marine insurance policy from Shelter Mutual Insurance Company (Shelter Insurance) to cover equipment used in Ladner's business. Ladner sued MCI (among other defendants) in tort for damages after the fire loss of an uninsured Caterpillar skidder. Ladner alleged that MCI negligently represented that it would obtain insurance on the skidder and negligently failed to process or procure that coverage. The circuit court granted summary judgment in MCI's

favor and dismissed Ladner's lawsuit.[1] The circuit court found that Ladner's claims were barred by Mississippi's "duty-to-read" doctrine. In particular, the circuit court found that Ladner was imputed with the knowledge of its insurance coverage, including knowledge of the contents of the policy declarations statements that did not list the subject skidder and that were furnished to Ladner after it purchased the skidder and before the fire loss. Ladner appeals. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. The record reflects that MCI is an insurance agency for Shelter Insurance and is owned and operated by Michael Conway. Ladner and its sister company AG Harvest Inc. (AG Harvest) are in the transportation and logging business and are owned and operated by Micah Ladner and his wife, Shauna Ladner. Micah Ladner conducts the logging and transportation operations of the businesses, and Shauna Ladner manages the businesses and conducts the insurance business. In 2010, MCI sold an inland marine insurance policy from Shelter Insurance to Ladner to cover equipment used in Ladner's business.

¶3. Ladner routinely and frequently purchased and sold equipment in the ordinary course of its business. Likewise, Ladner would often would add and remove equipment to and from coverage under its insurance policy. The process of adding equipment to coverage under the

---

[1] The other defendants named in Ladner's lawsuit, Caterpillar Financial Services Corporation, Shelter Mutual Insurance Company, and Michael Conway, individually, were dismissed by agreement prior to the entry of summary judgment in MCI's favor on all claims against it.

policy was initiated by Ladner, or the equipment seller, or the financing company involved in the transaction. MCI would be contacted by a person from one of these entities via telephone, email, text message, or fax with instructions to add a specific piece of equipment on Ladner's insurance policy.

¶4. The record further reflects that if MCI received a request to add a piece of equipment to Ladner's insurance policy from a party other than Ladner, such as the equipment seller, or the financing company, MCI would contact Ladner to gather information needed to procure insurance on the new piece of equipment before submitting the insurance change to Shelter Insurance. For each piece of equipment added or deleted from coverage, Shelter Insurance would issue a new declarations statement and would mail the new declarations statement to Ladner. MCI would send the proof of insurance to the insured, the sales representative, and/or the financing company.

¶5. On July 17, 2015, Ladner took possession of a Caterpillar skidder from Puckett Machinery, and on July 30, 2015, Micah Ladner, as president of Ladner, signed an installment-sales contract for the skidder. The skidder's $203,300.00 purchase price was financed by Caterpillar Financial Services Corporation (Caterpillar Financial). Puckett Machinery forwarded that sales contract, which included an "insurance selection form," to Caterpillar Financial for financing. Lynn Freshour, a Rule 30(b)(6) representative for Caterpillar Financial,[2] testified in her deposition that someone from Caterpillar Financial

---

[2] M.R.C.P. 30(b)(6).

3

faxed the insurance selection form for the new skidder to MCI on July 31, 2015, in order to ensure that Caterpillar Financial was listed as loss payee on the new skidder.

¶6. The record contains the fax confirmation receipt, showing that the insurance selection form was sent to "601-261-3197" on "7-31-15." In his deposition, Conway confirmed that the number shown on the fax confirmation receipt was MCI's fax number since 2007. Conway also testified that fax requests received by MCI would sometimes be kept, and would sometimes be thrown away. When asked whether he had any reason to dispute whether the fax was successfully sent to MCI's fax number, Conway responded, "At the present moment, no, I do not." After further questioning, Conway testified that he had "no reason to believe that this [insurance selection] form has been doctored, but I can't say whether Cat faxed it to us or not. All I can say is we never received it."[3]

¶7. The skidder was not added to the Shelter policy.

¶8. The record contains no evidence that there was any communication between Ladner and MCI relating to insuring the skidder. Micah Ladner testified that he never spoke with Michael Conway about insuring the subject skidder. Shauna Ladner, the office manager for Ladner who handled its insurance matters, testified that she could not recall whether she had contacted Michael Conway or MCI about this skidder. She further stated, "I'm not sure if someone contacted Michael Conway on this particular piece of equipment because, like I

---

[3] MCI's appellee's brief provides that it "is disputed that MCI received this fax, but for purposes of summary judgment, and now appeal, MCI agrees that the Caterpillar Financial document states that a fax was sent."

4

said, sometimes the finance companies would handle that. Sometimes the equipment salesman would handle that." Micah and Shauna Ladner, and Freshour (the Caterpillar Financial Rule 30(b)(6) representative), confirmed in their depositions that MCI did not tell anyone involved in the transaction that the skidder would be added to Ladner's insurance policy, and MCI did not provide proof of insurance on the skidder or any written confirmation that MCI would add the skidder to Ladner's policy. The Ladners and Freshour also confirmed that no one had contacted MCI prior to the skidder burning to check whether MCI had received the insurance selection form sent via fax from Caterpillar Financial or to ask about evidence of insurance for the new skidder.[4]

¶9. On October 12, 2015, about three months after Ladner took possession of the skidder, Shelter Insurance issued a new declarations statement and mailed it to Ladner. The three-page declarations statement contained an itemized list of twenty pieces of equipment insured under Ladner's Shelter Insurance policy. Four skidders were listed. The subject skidder was not listed. A little over two weeks later, Shelter Insurance issued another two-page declarations statement on October 30, 2015, and mailed it to Ladner. This declarations statement listed fourteen pieces of equipment insured under Ladner's Shelter Insurance

---

[4] Micah Ladner testified that he believed the skidder was insured because Caterpillar Financial funded Puckett Machinery for the skidder. However, Freshour, the Caterpillar Financial Rule 30(b)(6) representative, testified that Caterpillar Financial typically funded equipment before it received proof of insurance because "the equipment is purchased by the customer. And . . . it states in the documentation that it's their responsibility to ensure that they have proper insurance coverage and they're in default of their contract if they don't."

5

policy. Three skidders were listed. The subject skidder was not listed.

¶10. Shauna Ladner testified that she was "sure" that she received these declarations statements because she "receives declarations [statements from Shelter Insurance] periodically." She testified that when she receives declarations statements from Shelter Insurance, she would put these declarations statements in a folder and would then "randomly" review them every three to four months. She would compare the declarations statements received during that time period to Ladner's running equipment list. Micah Ladner testified that he would generally review Ladner's declarations statements once per year when it was time to renew the policy.

¶11. The skidder burned on November 5, 2015, nearly four months after Ladner took possession of it. Shelter denied Ladner's claim because the skidder was not listed on its insurance policy.

¶12. Ladner filed a complaint against MCI and Conway, individually, Shelter Insurance, and Caterpillar Financial in March 2017, seeking damages for the losses it sustained when its claim for the skidder was denied. Ladner's claims against Conway, Shelter Insurance, and Caterpillar Financial were ultimately dismissed prior to the circuit court entering summary judgment in MCI's favor and dismissing Ladner's case on June 7, 2019. With respect to MCI, Ladner alleged in its complaint that MCI was liable to it for "negligently fail[ing] to procure the insurance coverage [on the skidder]," negligent misrepresentation, and punitive damages.

6

¶13.    MCI moved for summary judgment in April 2019 on Ladner's claims against it, asserting that Ladner's negligence claims were barred because Ladner had a duty to read its policy declarations statements, and Ladner's failure to do so, as well as other inactions on its part, were the proximate cause of its damages.[5] MCI also asserted that there was no evidence of intentional conduct on its part to support Ladner's punitive damages claim.

¶14.    In its opposition, Ladner asserted that, at best, MCI's summary judgment motion only showed that there are genuine issues of material fact regarding comparative or contributory negligence, which was for the jury to determine. As for its negligent misrepresentation claim, Ladner asserted that the "misrepresentation" on MCI's part was allowing Ladner to believe, through the parties' prior course of dealings, that all that had to be done to get insurance in place on a piece of equipment "was to send a request to MCI by email, phone, fax[,] or text and the equipment would be added." Ladner also asserted there was intentional conduct on MCI's part to warrant punitive damages.

¶15.    On May 10, 2019, after explaining that it had read the briefs and the record, and had prepared a memorandum, the circuit court allowed the parties an opportunity for oral argument on MCI's summary judgment motion. The parties agreed to allow the matter to be submitted on the briefs and the record, and the circuit court then proceeded to issue its ruling granting MCI's summary judgment motion. The circuit court found that Ladner's claims

---

[5] With respect to Ladner's negligent misrepresentation claim, MCI also asserted that there was no evidence of any representation by MCI to Ladner with respect to the skidder or the procurement of insurance.

against MCI were precluded by the duty-to-read doctrine, which, as the circuit court explained, is "where knowledge of an insurance property is imputed to an insured regardless of whether the insured read the policy." Because it was "undeniable" that before the loss occurred Shelter Insurance sent two declarations statements to Ladner that did not include the subject skidder, Ladner was imputed with that knowledge. The circuit court found that Ladner's claims against MCI therefore failed.[6] On June 7, 2019, the circuit court entered is "Summary Judgment" for MCI and against Ladner and dismissed Ladner's case in its entirety.

¶16. On appeal, Ladner asserts that the circuit court erred in granting summary judgment in MCI's favor because MCI "owed Ladner a duty of reasonable care when MCI gratuitously accepted through its fax machine the . . . insurance selection form [regarding the subject skidder] from Cat Financial," and MCI's breach of that duty was purportedly the proximate or contributing cause to Ladner's uninsured loss on the skidder. Ladner also asserts that summary judgment in MCI's favor should be reversed because the duty-to-read doctrine does not bar its negligence claims against MCI.[7]

---

[6] After issuing its ruling, the circuit judge explained that "I think everything else in this case has previously been agreed upon and has been dismissed, and the only remaining matter was what I just made a ruling on." Nevertheless, the circuit court allowed five days for the filing of an opposition to issuing a judgment that disposed of the case in its entirety. The record contains no opposition or objection to entry of the final summary judgment on June 7, 2019.

[7] Ladner raises no issues on appeal regarding its punitive damages claim against MCI alleged in its complaint.

8

**STANDARD OF REVIEW**

¶17.   The circuit court's grant or denial of summary judgment is reviewed de novo. *Mladineo v. Schmidt*, 52 So. 3d 1154, 1160 (¶19) (Miss. 2010).  As set forth in Rule 56(c) of the Mississippi Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law."  "Evidence is viewed in the light most favorable to the nonmoving party, and the movant bears the burden to show no genuine issue of material fact exists." *Mut. of Omaha Ins. Co. v. Driskell*, 293 So. 3d 261, 264 (¶10) (Miss. 2020) (citing *Mladineo*, 52 So. 3d at 1160 (¶19)).

**DISCUSSION**

**I.      Gratuitous Duty**

¶18.   Ladner asserts that the circuit court erred in granting summary judgment in MCI's favor because MCI assumed a gratuitous duty to process and procure insurance on the subject skidder in this case.  According to Ladner, MCI's failure to fulfill this duty "proximately caused or contributed to the absence of insurance and consequent uninsured loss" that Ladner suffered.  To briefly review the facts relating to this assertion, for approximately five years before the skidder burned, equipment used in Ladner's business was insured under a Shelter Insurance policy that MCI sold to Ladner.  In those five years, Ladner routinely purchased and sold equipment, and the equipment was added to and removed from coverage under the

9

insurance policy. The process for adding equipment for coverage under the policy was initiated when Ladner, the equipment salesman, or the company financing the equipment contacted MCI via fax, among other methods, with instructions to add a specific piece of equipment to Ladner's insurance policy. Ladner asserts that by accepting requests for insurance via fax through the parties' five-year course of dealing, MCI gratuitously assumed the "duty to process the insurance request to add the subject skidder to the Shelter [Insurance] [p]olicy."[8]

¶19. In support of its argument, Ladner relies on the following general principle recognized by the Mississippi Supreme Court in *Higgins Lumber Co. v. Rosamond*, 217 Miss. 1, 8, 63 So. 2d 408, 410 (1953):

> One who, by a gratuitous promise or other conduct which he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent, causes the other to refrain from having such acts done by other available means is subject to a duty to use care to perform such service . . . .

¶20. In relying on this general principle, however, Ladner ignores the corollary to this rule that is applicable here: "Even if [plaintiff] can show an assumed duty based on detrimental reliance, *the assumed duty is limited to the scope of the gratuitous undertaking*." *Hunter Oaks Apartments L.P.*, 105 So. 3d at 428 (¶¶24-26) (emphasis added); *see also Wagner v.*

---

[8] "Whether a duty exists in a negligence case is a question of law to be determined by the court, not a question of fact for the jury." *Doe v. Hunter Oaks Apartments L.P.*, 105 So. 3d 422, 425 (¶9) (Miss. Ct. App. 2013). A question of law is reviewed de novo. *Miss. Farm Bureau Cas. Ins. Co. v. Smith*, 264 So. 3d 737, 742 (¶16) (Miss. 2019).

*Mattiace Co.*, 938 So. 2d 879, 886 (¶23) (Miss. Ct. App. 2006) ("Any liability incurred by [a defendant] must be limited to the duty it undertook[.]"); *accord Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1147 (¶41) (Miss. 2004) (recognizing that even if a defendant voluntarily assumed a "duty to treat and control fire ants . . . [the defendant's] liability is limited to the extent of the undertaking").

¶21. Based upon the applicable law and our review of the record, we find no merit in Ladner's "gratuitous duty" contentions. In this case, Ladner asserts that the alleged duty that MCI owed was to process the insurance request received from Caterpillar Financial on the subject skidder. According to Ladner, this assumed duty arose from Ladner's reliance on the parties' course of dealing with respect to *other* insurance requests on *other* equipment in the past. After a thorough review of the record, we find no evidence of any such gratuitous undertaking between MCI and Ladner with respect to the skidder at issue in this case. The record reflects that if MCI received an insurance request from someone other than Ladner, as here, MCI would contact Ladner to gather additional information needed to procure insurance on the new piece of equipment before submitting the insurance change to Shelter Insurance.

¶22. Michael Conway testified about this process as follows:

> [COUNSEL
> FOR LADNER:] So if Cat[erpillar] Financial or Puckett Cat[erpillar] sent you a fax and it was received in your office, what would be the next step if they're sending you an insurance selection form or request for verification? What would be the next step, Michael?

11

[MICHAEL CONWAY:] We would call the insured to verify that the purchase is correct. Then we would go in and complete the change, whether it be adding, replacing. That's another thing we would discuss with the insured is, is this going to be an additional piece of equipment or is it going to be replacing a current piece of equipment. Depending on those answers, we would go in, make the appropriate changes, and then send the proof of insurance, whether it be fax or email, to either and/or the insured, the sales rep or the financing company dealership.

¶23. Ladner does not offer any evidence contradicting Michael Conway's explanation of the process that is followed when an insurance-request form is sent by an entity other than Ladner. Indeed, Ladner quotes this testimony in its own appellant's brief in describing the process that is undertaken. Michael Conway also testified Shelter Insurance then would mail out a new declarations statement to Ladner, and MCI would send proof of insurance for the new piece of equipment to the party that initiated the request. Ladner likewise offers no contradictory evidence with respect to this testimony.

¶24. Although Caterpillar Financial, not Ladner, initiated the insurance request in this case, we find no evidence in the record of any communication between MCI and Ladner about insuring the subject skidder that would ordinarily take place under these circumstances. Micah Ladner testified that he never spoke with Michael Conway about insuring the subject skidder, and Shauna Ladner testified that she did not remember communicating with MCI about this skidder. Micah and Shauna Ladner, and a Caterpillar Financial's Rule 30(b)(6) representative (Freshour), also confirmed in their depositions that MCI never told anyone

12

involved in the transaction that the skidder would be added to Ladner's insurance policy, and no proof of insurance on the skidder (or any other confirmation regarding insurance on the skidder) was received by any party. Likewise, the two declarations statements Shelter Insurance sent to Ladner after July 2015 (when Ladner took possession of the skidder and signed the installment contract) and before November 5, 2015 (when the skidder burned), did not list the subject skidder. In short, we find no evidence that MCI assumed a gratuitous duty to procure insurance or process the insurance request on the skidder at issue in this case. *Doe*, 105 So. 3d at 428 (¶¶24-26). Ladner wholly failed to demonstrate the existence of a genuine issue as to any material fact on this issue.

¶25. Even if MCI had gratuitously assumed such a duty, and there existed a genuine issue of material fact whether that duty was breached, as Ladner asserts, we find that this would not warrant reversal of the circuit court's summary judgment in MCI's favor. We recognize that "Mississippi law requires insurance companies and their agents to adhere to the standard of care for their profession[.]" *Mladineo*, 52 So. 3d at 1168 (¶56). However, MCI is *only* "liable for any breach of this standard of care which *proximately* causes [Ladner's] damages." *Id.* (emphasis added). As we discuss in the following section, the proximate cause of Ladner's damages was its own failure to read the Shelter Insurance policy declarations statements, not MCI's alleged negligence in procuring or processing coverage on the skidder. We turn now to our discussion of this issue.

## II.     Duty to Read

13

¶26.    Ladner contends that the circuit court erred in finding that the duty-to-read doctrine barred its claims against MCI.  We disagree.  As the supreme court succinctly stated in *Mladineo*, 52 So. 3d at 1168 (¶55), "Mississippi law is very clear:  insureds are imputed with knowledge of the contents of their insurance policy, whether or not they have read the policy."   This "duty-to-read" or "imputed-knowledge" doctrine is "firmly rooted in Mississippi precedent," *id.* at 1162 (¶26), and bars Ladner's claims against MCI in this case.

¶27.    In *Mladineo*, the supreme court held that the insureds' negligent failure to procure insurance and negligent misrepresentation claims against their insurance agent and the insurance company were precluded under this doctrine, finding that "had [the insureds] executed their duty to read the policy, they would have noticed that the policy plainly did not cover the things that they assumed [it] would cover." *Id*. at 1164 (¶38).  As the supreme court explained, it was the insureds' failure to read the policy—not the agent's breach of duty—that was "the proximate cause of their damage." *Id.*

¶28.    The supreme court also affirmed summary judgment against the insureds on their negligent misrepresentation claim based upon their agent's alleged assurance of coverage, which "could have been cleared up by reading the policy." *Id.* at 1165 (¶41).  In making this determination, the supreme court found that the insureds "reasonably cannot have relied on the alleged assurances of coverage by [the agent] that directly contradicted the plain language of the policy they had in their possession." *Id.* at 1166 (¶47).

¶29.    Similarly, in *Bell v. Certain Underwriters at Lloyd's London*, 200 So. 3d 447, 452-53

14

(¶19) (Miss. Ct. App. 2016), this Court found that the insureds' negligence and fraudulent or negligent misrepresentation claims were barred by their failure to read their policy that clearly did not cover a barn on the insured's property. As this Court recognized, "the [insureds] could have ascertained that the policy did not cover the barn by simply reading their policy." *Id.* at 452 (¶19) (internal quotation marks omitted). This Court held that the insureds were therefore "imputed with knowledge that [the] policy did not cover the barn . . . [and] their negligence claim fails as a matter of law because the proximate cause of their damage was their own failure to execute their duty to read the policy, not [their agent's] alleged negligence in procuring it." *Id.* at 452-53 (¶19) (internal quotation marks omitted). The Court further found that "any claim for fraudulent or negligent misrepresentation [likewise] fails as a matter of law because the [insureds] could not have reasonably relied on an assurance of coverage that directly contradicted the plain language of the policy they had in their possession." *Id.* at 453 (¶19) (internal quotation mark omitted).

¶30. The same analysis applies in this case. Ladner could have ascertained that the subject skidder was not covered by the Shelter Insurance policy simply by reading the October 12, 2015, or the October 30, 2015 policy declarations statements. Neither set of declarations statements had the subject skidder listed—a skidder that Ladner had in its possession since July 17, 2015. Ladner was imputed with the knowledge that the policy did not cover the skidder. *Mladineo*, 52 So. 3d at 1164 (¶38); *Bell*, 200 So. 3d at 452-53 (¶19). In short, the proximate cause of Ladner's damage was its failure to read the declarations statements—not

15

MCI's failure to process the insurance request to procure insurance on the skidder. *Id.* Ladner's negligence claims against MCI therefore fails a matter of law.

¶31. Though Ladner does not appear to specifically address on appeal the negligent misrepresentation claim it alleged against MCI in its complaint, we also find that this claim fails as a matter of law. Even if MCI had "assured" Ladner that the skidder would be covered by accepting the insurance request via fax (as Ladner contended in its briefing in the circuit court), Ladner could not have reasonably relied upon any such purported "assurances" that were directly contradicted by the policy declarations statements in Ladner's possession that plainly did not include the subject skidder. *Mladineo*, 52 So. 3d at 1166 (¶47); *Bell*, 200 So. 3d at 453 (¶19).

¶32. Ladner, however, asserts that summary judgment was improperly granted because a genuine issue of material fact exists whether it had enough time to review the October 30, 2015 declarations statement before the skidder burned on November 5, 2015. In particular, Ladner asserts that "[w]ith mailing and delivery time considered, Ladner could have been left with as little as [three] days" to read the October 30, 2015 declarations statement before the skidder burned on November 5. Although Ladner wholly ignores the October 12 declarations statement, we recognize that using this same three-days-for-mailing calculation Ladner would have had at least two-and-one-half weeks to read the three-page October 12, 2015 declarations statement before the skidder burned. We further point out that Ladner admits

16

that it received both the October 12 and October 30 declarations statements;[9] both sets of declarations statements were correctly addressed; and Ladner makes no assertion that it did not receive the declarations statements before the skidder burned. For the reasons addressed below, we find that Ladner has failed to demonstrate the existence of a genuine issue of material fact on this issue, and its "insufficient-time-to-review" argument is without merit.

¶33. First, Ladner's insufficient-time-to-review argument does not create a genuine issue of material fact so as to avoid summary judgment because there is no evidence that these declarations statements would have been read upon receipt. The evidence, instead, shows that the opposite is true. Shauna Ladner testified that when she periodically received declarations statements from Shelter Insurance, she would put them in a folder. She would then "randomly" review them every three or four months, comparing the declarations statements she collected in that time period to the running equipment list that Ladner kept. As a matter of law, "[an insured] may not neglect or purposely omit acquainting himself with the terms and conditions of the insurance policy and then complain of his ignorance of them." *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So. 2d 920, 922 (Miss. 1980); *see Mladineo*, 52 So. 3d at 1166 (¶46) (citing *Kelley* for this principle). We decline to apply an insufficient-time-to-review exception to Mississippi's duty-to-read doctrine under these circumstances.

---

[9] As addressed above, the record reflects that each time a piece of equipment is added or deleted from the Shelter Insurance policy, Shelter generates a new declarations statement and mails it to the insured, Ladner. Shauna Ladner testified that she was "sure" that she received these declarations statements because she "receives declarations [statements from Shelter Insurance] periodically."

¶34.     Additionally, even if an insufficient-time-to-review exception exists with respect to Mississippi's duty-to-read doctrine and we were to apply it here, we find that two-and-one-half weeks, or even three days, is sufficient as a matter of law for Ladner to have reviewed the October 12 and October 30 declarations statements, respectively, under Mississippi precedent.    In *Mladineo*, the supreme court rejected the insureds' suggestion that an insufficient-time-to review exception should be applied in their case, where they had their policy for four months before their uninsured loss occurred.  *Mladineo*, 52 So. 3d at 1162 (¶27).  We find the supreme court's analysis in *Mladineo* instructive.

¶35.     The supreme court began its analysis by observing that "as a matter of law . . . an insured is charged with the knowledge of the terms of the policy upon which he or she relies for protection."   *Id.* at 1161 (¶26).   The supreme court then recognized that it had "repeatedly" emphasized that an insured is imputed with the knowledge of what his policy contains, *regardless of whether the insured has read it*, as follows:

> [W]e emphasized that "knowledge of an insurance policy is imputed to an insured regardless of whether the insured read the policy." *Oaks v. Sellers*, 953 So. 2d 1077, 1083-84 [(¶23)] (Miss. 2007). This Court repeatedly has held this. *See Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 83 [(¶15)] (Miss. 2003) ("[I]nsureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy[.]"); *Cherry v. Anthony Gibbs Sage*, 501 So. 2d 416, 419 (Miss. 1987) ("Even if [the insureds] had not [read the subject insurance policy], knowledge of its contents would be imputed to them as a matter of law."). . . .  Thus, the "duty-to-read" and "imputed-knowledge" doctrines are firmly rooted in Mississippi precedent.

*Id.* at 1161-62 (¶¶26-27).

18

¶36.    In the light of this precedent, the supreme court did *not* recognize that an "insufficient-time-to review" exception existed under Mississippi law.  Instead, the supreme court simply rejected the insureds' argument out-of-hand, observing that "the [insureds had] possession of their policy for four months—*enough time to have read the policy*—and are imputed with knowledge of the policy's contents pursuant to our precedent."  *Id.* at 1162 (¶27) (emphasis added); *see Goodwin v. Progressive Gulf Ins. Co.*, No. 3:19-CV-447-CWR-LRA, 2019 WL 6718986, at *3-4 (S.D. Miss. Dec. 10, 2019) (recognizing that under Mississippi's duty-to-read and imputed-knowledge doctrines the insured "is imputed to have knowledge of the policy's contents once he had received [the declarations statement and its subsequent revisions], beginning with the first declarations [statement] received on August 23, 2017").

¶37.    As the supreme court found in *Mladineo*, we likewise find in this case that Ladner, as a matter of law, "had time to have read the [declarations statements]," *Mladineo*, 52 So. 3d at 1162 (¶27), so as to allow application of the duty-to-read doctrine.  Accounting for mailing and delivery, Ladner had the October 12 declarations statement for at least two-and-one-half weeks before the skidder burned.  This is not a situation in which Ladner had to digest a detailed, multi-page insurance policy.  Rather, the three-page declarations statement listed twenty pieces of equipment—only four were skidders.  Similarly, the two-page October 30 declarations statement listed fourteen pieces of equipment—only three were skidders.  Indeed, when the declarations statements were sent in October 2015, Ladner already had the subject skidder in its possession since July 17, 2015.  In that three-month time Ladner had

19

not received notice that insurance coverage had been secured, nor had Ladner sought to confirm whether the subject skidder was covered. Particularly under these circumstances, if it had chosen to do so, Ladner had ample time to review and compare the October 12 and October 30 declarations statements to its running equipment list before the uninsured skidder burned on November 5, 2015. We find that Ladner's insufficient-time-to-review contention is without merit.

¶38. As an additional argument, Ladner appears to assert for the first time in its reply brief that the duty-to-read doctrine does not apply to it because "MCI has its own errors and omissions policy," and thus it is this policy, not the Shelter Insurance policy, that "Ladner relies upon for protection." Ladner waived any opportunity to make this argument. "We will not consider issues raised for the first time in an appellant's reply brief." *Ogunbor v. May*, 204 So. 3d 840, 848 (¶33) (Miss. Ct. App. 2016); *Bishop v. State*, 882 So. 2d 135, 155-55 (¶51) (Miss. 2004).

¶39. In any event, we also find this issue to be without merit. The issue in this case is MCI's alleged failure to process an insurance request to procure coverage for the subject skidder *under the Shelter Insurance policy*. Applying the same analysis as applied by the supreme court in *Mladineo*, Ladner is imputed with the knowledge of the contents of the Shelter Insurance policy (including the declarations statements)—and it is Ladner's failure to read *the policy it purchased to cover the property at issue* (the skidder) that proximately caused its damages and precludes Ladner's claims against its agent, MCI. *Mladineo*, 52 So.

3d at 1164, 1166 (¶¶38, 47); *Bell*, 200 So. 3d at 452-53 (¶19). Ladner "relies [on the Shelter Insurance policy] for protection," and "is charged with the knowledge of the terms of [that] policy" in this case. *Mladineo*, 52 So. 3d at 1161 (¶26).

¶40. In sum, Ladner has failed to show the existence of a genuine issue as to any material fact in this case. The circuit court properly granted summary judgment in MCI's favor and against Ladner.

¶41. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS AND LAWRENCE, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**